Afterwards, at an adjournment of the March term, in the county of Suffolk, holden in July following, the opinion of the Court was delivered as follows, by
Parker, J.
This cause was tried before me at the sittings after the last law term, in Cumberland, in May last; and I then inclined to the opinion, that the defendants should not be permitted to allege a *223 falsity in an instrument made and signed by themselves, and which had by them been put into general circulation as money. Notes of this description, under the denomination of Taber’s notes, to a large amount, having become a common currency in the district of Maine, it suddenly struck me as inconsistent with the common principles of justice, and the policy of the law, that the promisers in those notes should be allowed to avoid payment of them to an innocent holder, by alleging that they bore false dates, and by showing that in uttering them they had contravened the laws of the commonwealth.
I therefore rejected the evidence offered: but very soon after the trial, having revolved the question in my mind at more leisure, I came to doubt of the correctness of my opinion, and intimated my desire to the counsel, that the question should be reserved for the consideration * of the whole Court. This was [*291 ] done in such manner as to cause very little delay, and no inconvenience to the parties or their counsel; it having been agreed that the question should be taken up by the Court at this adjourned session, and that the arguments of the counsel should be reduced to writing and transmitted to the Court.
Upon an attentive consideration of the question, and of the arguments sent to us, which on both sides are concise and perspicuous, we are unanimously and clearly of opinion, that the facts proposed by the defendants to be proved to the jury at the trial, constitute a good defence against the counts, to which those facts are applicable, and that it is competent to the defendants in this action to set up and maintain such defence.
The statute of 1804, c. 58. <§> 1., enacts that all bills, notes, checks, droughts or obligations whatsoever, under the amount of five dollars, payable to bearer or to order, shall be wholly in writing ; and that all notes, &c., under the aforesaid amount, and payable as aforesaid, which should be made or issued after the first day of April, then next, and which should bear the impression of types, plates or printing, should be utterly void, and that no action should be thereon sustained in any Court of law.
The second section of the same statute imposes a penalty upon any person who should issue or pass any of the securities described in the first section, after the said first day of April, which was April, 1805.
The same statute, c. 134., imposed an increased penalty upon any person who should, after the tenth day of the same April, issue or pass like notes, other than those of incorporated banks, for a less sum than five dollars, or whereon less than five dollars should be due, with intent that the same should be circulated as currency.
The statute first cited is peremptory and unequivocal, in enacting *224 that all notes like those declared on in this action, made [ * 292 ] or issued, after the first day of April, * 1805, shall be utterly void ; and it prohibits the sustaining of any suit upon them in any Court of law. The defendants say, and they offered to prove, that some of the notes sued in this action, were made and issued after that day. To reject the proofs of these facts, because the defendants are the original promisers, and because the plaintiffs may be supposed to be innocent holders of the notes for valuable considerations, would be, to all intents and purposes, to defeat the operation of the statute, and would amount to a judicial repeal of an act of the legislature.
The maker of a note payable to bearer is generally the only person to be called upon for payment, it passing from hand to hand, on the credit of the promiser’s name, like bank-bills, the receiver seldom requiring any guaranty from him who passes it. Now the declared object of the legislature was entirely to prevent the circulation of such paper. But if, by giving a fictitious date to them, the maker is prevented from showing that they were made or issued after the time, when they were declared by the statute to be void, they would continue to circulate, as long as there should be confidence in the ability of the makers to pay them.
However hard the operation of the statute may appear to be against persons, into whose possession such notes may have come bona fide, and for a valuable consideration, it is a hardship created by law for the public good, and the Courts of law are prohibited from granting any relief against it.
Nor is it altogether certain that the receivers of such notes are free from blame, although not privy to the actual making or antedating of them. The laws of the government are presumed to be known by all the citizens. If the notes were in fact made or issued after they were declared void by statute, and after a penalty was attached to the passing of them, although no penalty is expressly enacted against the receiver; yet the act of receiving [ * 293 ] was necessary to enable the offender to pass * them, and in this view the receiver may be considered as having aided in the offence of passing. Nor is it improbable that the legislature contemplated the punishment of the receiver, when they took from him all power of coercing payment of such notes in the Courts of law. But be this as it may, whether the plaintiffs in this action are innocent or not; to authorize them to maintain a suit, and recover judgment on notes of this description so’ situated, when the legislature has declared them to be utterly void, would be effectually to annul an act, the wisdom and the policy of which the legislature alone had the right to determine.
*225 Nor is it a novel doctrine, that a person shall be permitted to avoid his contract by alleging his own criminality, provided it consists in the violation of some positive statute of the government Contracts, the consideration of which is money won at play, or loaned at unlawful interest, have always been subject to the same rule, not only against those who participated in the offence, but even against innocent endorsees, when they have claimed the performance of such contracts.
The case of Lowe vs. Walker (5) shows this long to have been the law in England; and it is understood that the like principle has been uniformly adopted and practised upon by the Courts in this country.
It has been suggested by the counsel for the plamtiffs in the close of their argument, that to make this a good defence, it should have been specially pleaded.
But it is not necessary; for in assumpsit every thing, which destroys the right of action, may be given in evidence under the general issue.
Indeed, there seems to be no room to doubt upon this question ; and nothing but a reluctance to permit a man to avail himself of a falsity in circulating these notes, and afterwards to avoid payment by showing the truth, could have caused a hesitation at the trial.
The verdict must be set aside, and a new trial granted.

 Doug. 736.