Richardson, J.

I concur; because my understanding of the evidence of Wallis is, that he denied the usury expressly; and, therefore, the defendant, Nelson, was an incompetent wife-Mess under the act.

*150
Colcoc1', Justice.

— In this case, there is a difference of opinion, and it is thought important that the view which is eater-iained of the law, by those of the bench who are opposed to 'the decision, should be expressed: 1st. Because the decision, : it is believed; is in opposition to the adjudged cases of our own courts: 2ndly, Because the decision, as 1 think I shall clearly -jsbew, destroys the act against usury.
The plaintiff moves for a new trial on the grounds:
r J st. That his oath, should have been taken as conclusive; and consequently that the defendant should not have been permitted to give evidence:
2nd. That he being an innocent indorsee, ignorant of the ..consideration.for-which the note was given, cannot be affected by the usury. (a)
I shall consider the last ground, first: For if it be established that the plaintiff cannot recover on the endorsement of Nelson, which endorsement was on the note from the first, and on which the money was lent, it follows of course, as I shall shew, that the defendant was properly admitted according to .the provisions of the act. In the consideration of the case, the "fact of usury is taken for granted; because it is too clear- under all the testimony to be doubted byany one-and because the jury have so found. The doctrine.^apon this subject, so far as.it lias been decided by our courts, being found in a number, .of adjudged cases, I will take a view-of the whole subject; and J am further inclined to this course, because I think on questions -where there is such a serious division of the bench, too much labour cannot be expended on a case.
The act against usury, declai*es that “ no person or per.sons whatsover, upon any contract, shall take directly-or indi-rectly, for loan of any money, wares,or merchandize,-or other commodities whatever, above the value of seven pounds, for the forbearance of one hundred pounds for one year, and so after that rate for a greater or a less sum, or for a-larger, or a shorter time; and that all bonds and specialities, contracts, promiseá and assurances whatsoever, made after the time aforesaid, *151 whcreupon or whereby a greater rate of interest shall be resefv-. ed or taken, shall be utterly void and of none effect.” " What was the contract here, and by whom was it made? It was for the loan of money, at the rate of 50 per cent, per annum, and it was'made by the defendant; it is a contract whereby a greater rate of interest than that which the law allows has been obtained and consequently, by the provisions of the act, utterly void and of none effect; and yet upon this contract it is said Nelson is to be’ made to pay the debt.
The object of the statute being to- prevent the taking a greater rate of interest than that allowed by law. The most effectual mode, of accomplishing the purpose, was to decláre the contract void; that .is to- say, no one shall be made answerable for a debt contracted under such circumstances. But it is said the law only means that this shall be the case as to- the parties themselves, and to them.alone who make the contract. This exception or limitation is not to be found in the act itself Where then is it to be found? It is answered in the policy of the law. This cannot be; for it is clear to-demonstration that this would at once destroy the law itself; for it is easy to pass such notes at full yalue as any others, when it is understood that in the- hands of a person, ignorant of the usury, they would*" be binding. Let the usurer pu-U-his notes into circulation, and he’is safe;-- again, it is said, it is unjust that" a man who pays-tile full valúe of a note, without a knowledge of the usury, should ■lose his debt. The first answer to this.is, he does not lose his debt, he who has passed the note to him is responsible to him.-; But he may he insolvent.*- This is a common-risk against which the' law does not protect. Every-man is left free to contract with whom he pleases. If he gives credit to an insolvent man, the fault is his own; and the ease of a* had note is like the case of a blind horse; the purchaser is not only not protected- - against such an- imposition, but he is not entitled to commiseration; for the exercise of the faculties- which he possesses may protect him against it. It is as easy to inquire of the makerB and indorsers of a note, whether it was given for a valuable consideration, as to try a horse.-.,
The plaintiff then can find no protection in the law itself, none in its policy, nor any.in the' common protection which the *152 law thinks proper to afford. Now let us see what the adjudged cases -say on this subject; and I begin with our own. In 2 Bay 30, in the case of Payne Trezevatt(, this very point was- made and determined; and the plaintiff was ignorant, as the witness Stated, of the original contract between the defendant and Sarce-das, made through the medium of House, the Broker. The court say, admitting Payne to have been an innocent holder, for a valuable consideration; yet as the note was absolutely void in its creation, he cannot recover against the drawer. In 2 M'Cord, p. 178, in the case of Wills vs. Brummer and Wife, the same principle applied, even to one of the original parties to the note, is maintained; that ignorance of the usury shall not alter the law; and again in a subsequent case of Flemming vs.. Mulligan, the very ground, was taken (the fifth) and the opinion on that ground (whether arising out of the facts of that particular case can make no difference, because it is ex-' pressly taken and expressly decided on,) is thus expressed, “ according to the settled construction of the statute against usury, where unrestricted by any subsequent enactments, a negotiable instrument, if usurious in its original concoction, is void in the hands of a bona fide holder;” and besides the case already noticed from 2d. Bay, other authorities are referred to, In support of this position; the first of which is in 15 Johnson, p. 56, where it was recognized as law, though in the case the doctrine did not apply. The next was the case of Jones & Hake, 2 Johns. Ca. 60, where the plaintiff was, as far as appears, an innocent indorsee, and yet the court held that he ought not to recover;, the next was the case of Ackland, vs. Pearce, 2 Campbell, 599., where it was held that the drawer’s ignorance should not alter the law; and lastly, 2 Phillips on Evidence, page 13, note, and Comyn on Usury, 161 to 182, where all the cases on this subject are collected, and where it is said, in totidem verbis, that c: a bona-fide holder cannot recover on a bill founded in usury.” S® neither can he recover upon a bill where the payee’s indorsement, through which he must claim, has been made on an usurious contract; and there too will be found the distinction between-cases arising under common law, and cases of usury and other cases arising under statutes, declaring such instruments void in fheir creation. A want of attention to this distinction is, as J *153 conceive, the canse of the difference of opinion. “ Independently,” says Mr. Phillips, “ of statute provisions, where a negotiable instrument is voidable between the original parties, either by its being founded on a consideration prohibited by the common law, or where it was without consideration at its commencement, it is notwithstanding g-ood in the'hands of an indor-see for valuable consideration, withoutnoUce.” As between immediate parties, those parties between whom there is ;i privity of contract, the want of consideration or .the subsequent discharge of the debt is a valid defence, but an indorsee without notice and for valuable consideration is not affected by fraud'or other transactions between the original parties, (to which there are exceptions which arc pointed cut;) one of the" cases referred to will be sufficient; in 5 Mass. 286, a case which the judge supposed to be analogous to the cases of usury and gaming,' he says, “though in an action by an innocent indorsee, against the maker of a note, want of consideration or an illegal one, if unknown to the plaintiff, forms no legal defence at common law,’ yet between the same parties, a consideration illegal by statute and a legislative declaration that the instrument declared on, shall be deemed utterly void, will certainly defeat the action.” I refer merely to a few English cases, collected in order, on usury, 'where the same position is laid down.- _ See page 105, 106.
It has been said, that in the argument of the case of Fleming and Mulligan, it was conceded that the hank where the note had been discounted by Fleming, could have recovered. The concession is again made, and it was therefore that the note, came back into the hands of Fleming. His indorsement to the bank, was a new contract for a full consideration, and) though written on the back of an usurious note, was not therefore void-But the bank could not have!recovered against any of the parties to the original contract, nor would they ever discount a note under the circumstances under which this plaintiff discounted this. If Mr. Dunn had applied to them, I have no hesitation . in saying they never would have discounted it for him, without his endorsement, nor indeed can I bring my mind to the belief that any man would do so in an honest transaction. Í have said that if it were shewn that the plaintiff could not maintain hia section against the defendant, aliho’ considered, as art innocent *154 indorsee, that it would follow that the defendant was properly, admitted as awitness, and I think it has been satisfactorily shewn that both on principle and authority, an innocent indorsee cannot, maintain an action on an usurious note, against any of the parties to the usurious contract. I proceed then to the second ground.
The plaintiff did not deny but that the note may have been thus illegally made; all he knew, as he said, >vas that he gave Dunn a full consideration; he did not know whether there was usury or not. The subject then was open for investigation and the defendant ivas offered as a witness. How could the court refuse him? The act says, he shall be a competent witness and shall be sworn. The words are “the borrower or party to such usurious bond, &c. shall be and is hereby declared to-be a good and sufficient witness in law, provided, that if the person or persons against whom such evidence is offered, will deny upon oath in open court to be administered, the truth of what such evidence offers to swear against him, then such witness shall notbé sworn.” Now, as there was no denial of what the borrower or party (if he can be distinguished as only aparty,) was willing to swear, it follows that he was rightly admitted, and his evidence was considered as out-weighing that of Dunn’s, and in my opinion very properly. It is said, his (Nelson’s) incompetency appeared afterwards, and therefore his testimony ought to have been rejected; but that incompetency can be shewn in no other way than by saying that Wallis denied the usury. If that is a denial of the usury, words have lost their meaning. If this is to satisfy the provisions of the statute against usury, it is a repeal of the statute. Now admitting that the statute is impolitic, which I by no means think is the case, I think it better to leave it to the legislature to act, than in this way to remove what has been for ages considered as a necessary shield against the practices of the fraudulent and against the destruction of the circulating medium of the country, and what in the language of the preamble to tips act “the constant experience of all states and nations for ages past has deemed necessary.”
But another objection is suggested, that it appears that Dunn was the real lender3 and therefore his testimony will *155 exclude Wallis.. The amount of this is, that the court will direct a plaintiff to conduct his cause so as to shield himself against the operation of the statute. Dunn was not offered until Nelson was sworn, the plaintiff and his counsel certainly knew the case and w_ere at liberty to conduct it as they thought best. If they did not choose to bring forward the lender, the court, under the provisions of the act, could not refuse the oath of the borrower. The court could not divine who the lender was. The natural presumption was that which occurs in all such cases, when the lender is not produced, that is, that he could not contradict what the borrower was willing to swear to. If the argument meant to say, that the court should have directed the jury to believe Dunn in preference to Nelson; I can only reply, that I have no doubt that such a recommendation would have been considered as an insult to them and dereliction of duty in the presiding judge. Lastly, this is an appeal to the discretion of the court; no rule of law has been violated, the plaintiff, as he had a right to do, was permitted to conduct his cause as he pleased, and if he has, by his own management, laid open to this court the illegality of his cause of action; is it the duty of the court to help him out of the difficulty? Is the aid of this court to be lent to assist usury? Wilkes vs. Rosevelt, 3 Johnson 206. I presume pot. I at leastj will prefer to say to them in the language of Lord Mansfield, in the case of Hoyer & Edwards, Cowper 114, that where the real truth is an usurious loan of money, the wit -of man shall not find a shift to take it out of the statute.

 This ground does not appear on the brief, or in the opinion of the court The impression that such a ground was taken, probably originated fra» a question put by one of the court inthe-course of the argument,