ANTHONY, (GORDON v.). See Case No. 5,-605.

## Case No. 488.
### ANTHONY v. JASPER COUNTY.

[4 Dill. 136;[1] 3 Cent. Law J. 321.]

Circuit Court, W. D. Missouri. 1876.

REGISTRATION BOND ACT—FRAUDULENT ANTE-DATING—INNOCENT HOLDER.

A statute of Missouri (Laws 1872, p. 56) provided that "before any bond hereafter issued by any county shall obtain validity or be negotiated," it must be first registered by the state auditor, who shall certify thereon that all conditions precedent, required by law, and by the contract under which the bonds were ordered to be issued, have been complied with. Subsequent to the passage of this statute, certain bonds were issued by the county court of Jasper county to a railway company, the said company not having fully complied with the conditions upon which the issue of the bonds had been authorized by a vote of the people. In order to evade the statute, the bonds were antedated to a date prior to the passage of the act: *Held*, that they were void, even in the hands of an innocent holder, and that the county was not estopped to set up this defense. Argument.—Where a statute declares absolutely and without exception that a contract or bond or note is void, it is void into whosesoever hands it comes.

[See note at end of case.]

The court made the following special finding of facts, viz.:

1. This action is brought for the collection of interest coupons, originally attached to bonds of the following tenor:

"United States of America, state of Missouri. No. 1. Jasper County Bond. $500. Interest, ten per cent. per annum. Know all men by these presents: That the county of Jasper and state of Missouri acknowledges itself indebted and firmly bound to the Memphis, Carthage, and Northwestern Railroad Company, or bearer, in the sum of five hundred dollars, which sum said county of Jasper, for and on account of Marion township, for value received, hereby promises to pay said company, or bearer, at the National Park Bank, in the city of New York, and state of New York, twenty years after date, with interest thereon from the date hereof at the rate of ten per cent. per annum, pay-

able semi-annually, on the first days of January and July of each year, on the presentation and delivery at said National Park Bank, in said city of New York, state of New York, of the coupons of interest hereto attached. This bond is issued pursuant to an order of the county court of said county of Jasper, made by authority of an act of the general assembly of the state of Missouri, entitled 'An act to facilitate the construction of railroads in the state of Missouri,' and approved on the 23d of March, A. D. 1868, and authorized by a vote of more than two-thirds of the voters of said township. In testimony whereof, the said county of Jasper has executed this bond by the presiding justice of the county court of said county, under the order of said court, signing his name hereto, and by the clerk of said court, under the order thereof, attesting the same, and affixing thereto the seal of said court. This done at the office of the clerk of said court, this 28th day of March, A. D. 1872. [Seal.] R. S. Merwin, Presiding Justice of the County Court of Jasper county, Missouri. A. E. Gregory, Clerk of the County Court of Jasper county, Missouri.

"Carthage, Jasper County, —— 1872. The county of Jasper promises to pay the sum of twenty-five dollars on the 1st of July, 1873, being interest on bond No. 1, for $500, payable at the National Park Bank, in the city and state of New York. A. E. Gregory, Clerk of the County Court of Jasper county, Missouri."

2. That at the regular term of the county court of Jasper county, Missouri, held on the 10th day of February, 1872, the following, among other proceedings, was had, to-wit: "Whereas, more than twenty-five persons, tax-payers and residents of the municipal township of Marion, in the county of Jasper, in the state of Missouri, have petitioned this court, setting forth their desire as a township to subscribe to the capital stock of the Memphis, Carthage, and Northwestern Railroad Company, proposing to build a railroad into and through said township; that the amount they desire to subscribe is seventy-five thousand dollars, upon the following named terms and conditions, viz.: First. That the railroad of said company be continued and extended through said township of Marion, from the depot at Carthage, westward to some point on the Missouri River, Fort Scott, and Gulf Railroad, in the state of Kansas, within nine months from the 1st day of March, one thousand eight hundred and seventy-two, and that the work of grading and constructing be commenced within twenty days after the date of making the subscription, and be pushed vigorously until completed. Second. That the machine and repairing shops of the said company be permanently located and forever maintained within three-quarters of a mile of the public square in Carthage;

---

[1][Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

and said shops, with their equipments, when completed, shall cost not less than three hundred thousand dollars; that the construction of said shops shall begin within sixty days after the cars are running to the depot at Carthage, and be completed within one year. Third. That such subscription shall be paid by issuing and delivering of the bonds of said township to the said railroad company; said bonds to be of the denomination of five hundred dollars each, to bear date on the day and year when said railroad company shall become entitled to receive the same under the stipulations herein contained. Aforesaid bonds to bear ten per centum interest per annum from the date they are delivered, the interest payable semi-annually, and represented by the coupons to be attached, the principal payable twenty years after date, and both the principal and interest payable at the National Park Bank, in the city of New York, in the state of New York. 'Said railroad shall be equal to the standard construction of railroads in the state of Missouri, and of the same gauge as the Atlantic and Pacific Railroad.' The aforesaid bonds shall be issued and be placed in escrow, and bear interest as aforesaid from the date of the delivery of said bonds to the aforesaid railroad company. Fourth. That when the cars are running regularly on said railroad, for the transportation of freight and passengers, from the town of Pierce City, in Lawrence county, Missouri, into and through Marion township to the depot at Carthage, and thence westward to a point on the Missouri River, Fort Scott, and Gulf Railroad, within the time specified in the first specification herein, to-wit: nine months from the 1st day of March, one thousand eight hundred and seventy-two, and making regular connection with the Atlantic and Pacific Railroad at Pierce City, in the county of Lawrence, in the state of Missouri, and the Missouri River, Fort Scott, and Gulf Railroad, in the state of Kansas, fifty thousand dollars of the said bonds, and when at least fifty thousand dollars shall have been first expended and paid out towards the construction of said machine and repair shops, and work begun in good faith for their erection, then twenty-five thousand dollars more of said bonds shall be delivered to said company."

3. That at a special term of the county court of Jasper county, Missouri, held on the 28th day of March, 1872, the following, among other proceedings, was had, to-wit: "In the matter of a subscription to the capital stock of the Memphis, Carthage, and Northwestern Railroad Company, in behalf of Marion township: Whereas, it appearing from the returns of an election, held in pursuance of an order of this court, on Tuesday, the 5th day of March, A. D. 1872, that more than two-thirds of the qualified voters of the municipal township of Marion, in Jasper county, Missouri, voting at said election, are in favor of subscribing to the capital stock of the Memphis, Carthage, and Northwestern Railroad Company seventy-five thousand dollars, upon the terms and conditions as set forth in the petition heretofore presented, and the order of this court, made on the 10th day of February, A. D. 1872, for said election, and that more than two-thirds of the voters of said township voted in favor of such subscription being made; now, therefore, it is ordered by the court that the sum of seventy-five thousand dollars be, and is hereby, subscribed to the capital stock of said railroad company in behalf of said Marion township, according to the terms and conditions of said order of election, and that the bonds to be issued in payment of such subscription be signed by the presiding justice of this court, and attested by the clerk of this court, with the seal of this court affixed."

4. That at an adjourned term of the county court of Jasper county, Missouri, held on the 4th day of June, A. D. 1872, the following, among other proceedings, was had, to-wit: "Ordered by the court, that fifty thousand dollars of Marion township bonds, voted to the Memphis, Carthage, and Northwestern Railroad Company, be issued, and that the clerk of this court have the same registered according to law, and that when so registered the same shall be deposited in escrow in some responsible banking house in the city of St. Louis."

5. That an act of the general assembly of the state of Missouri, entitled "An act to provide for the registration of bonds issued by counties, cities, and incorporated towns, and to limit the issue thereof," approved March 30, 1872, enacted inter alia:

"Section 4. Before any bond hereafter issued by any county, city, or incorporated town, for any purpose whatever, shall obtain validity or be negotiated, the same shall be presented to the state auditor, who shall register the same in a book or books provided for that purpose, in the same manner as the state bonds are now registered, and who shall certify by endorsement on such bond that all the conditions of the laws have been complied with in its issue, if that be the case, and also that the conditions of the contract under which they were ordered to be issued have also been complied with; and the evidence of that fact shall be filed and preserved by the auditor. But such certificate shall be prima facie evidence only of the facts therein stated, and shall not preclude or prohibit any person from showing or proving the contrary, in any suit or proceeding to test or determine the validity of such bonds, or the power of any county court, city or town council, or board of trustees, or other authority, to issue such bonds; and the remedy by injunction shall also be at the instance of any tax-payer of the respective county, city, or incorporated town, to pre-

vent the registration of any bonds alleged to be illegally issued or founded on any provisions of this act."

6. That John Purcell was the presiding justice of the county court of Jasper county on the 28th day of March, 1872, and continued to hold said office until the — day of September, 1872, when he resigned; and that R. S. Merwin was a member of the said county court in March, 1872, and until the 21st day of October, 1872, when he became, and thereafter was, presiding justice of said court; and these facts appear by the records of said court.

7. That the bonds in controversy were sealed with the seal of the county court of Jasper county, affixed by the clerk and signed by the clerk, and at the same time said bonds were signed by the said R. S. Merwin, which was after he became presiding justice of said county court, in October, 1872. Merwin delivered the said bonds in October, 1872, to the Union Savings Association, of St. Louis, for the use of one Edward Burgess, a contractor for the building of the railroad named in the bonds, having first removed the first two coupons; and the said bonds were purchased by one William C. Wilson from said Burgess at the rate of fifty-five cents on the dollar, which was then the market value of said bonds, and the same were paid for in November, 1872, by the said Wilson giving his check to Burgess for the amount ($27,500) on said savings association, which check was paid. Neither the other justice of the county court, nor the county court, consented to the said delivery of the said bonds by Merwin to or for the use of Burgess. The said railroad for which the bonds issued was finished through Marion township, but the said railroad company has never complied with the condition of the vote requiring its railroad to be continued and extended through said township of Marion, from the depot at Carthage, westward, to some point on the Missouri River, Fort Scott, and Gulf Railroad, in the state of Kansas, and there still remains about nine miles of such railroad to be constructed in Kansas.

8. That said bonds, when signed, sealed, and delivered as aforesaid, were antedated so as to bear date the 28th day of March, 1872, and they were never presented to the state auditor, and he never registered the same, nor made any certificate thereon, under the provisions of said statute, approved March 30, 1872, and said bonds, as held by the plaintiff, contain no certificate of registration endorsed or written thereon.

9. That the plaintiff is a bona fide purchaser of said bonds and coupons for value, without actual notice of any matter of fact impairing the regularity and validity of said bonds, and without actual notice that the said bonds had been antedated so as to bear date prior to the 30th day of March, 1872.

Joseph Shippen, for plaintiff.

E. J. Montague, for county.

Before DILLON, Circuit Judge, and KREKEL, District Judge.

DILLON, Circuit Judge. The well-known history of the issue of municipal bonds in this state, as it appears by the many cases in this court, shows that conditions imposed by law requiring a popular vote, or conditions in the proposition submitted to the voters, intended to prevent fraud, and to secure the actual building and completion of the roads, have been often evaded, and the bonds issued without compliance therewith. Such bonds, when negotiated for value, the courts have held to be binding. To prevent such improper or improvident issue of bonds in the future, the legislature passed the act of March 30, 1872, (Laws 1872, p. 56.)

The fourth section of that act provides that "before any bond hereafter issued by any county * * * shall obtain validity or be negotiated," it must be first registered by the state auditor, who shall certify thereon that all conditions precedent, required by law, and by the contract under which the bonds were ordered to be issued, have been complied with.

In this case the bonds were signed, sealed, and issued in the manner above appearing, after this statute went into effect, and were antedated to a date prior to the passage of that enactment. In point of fact, the conditions on which the bonds had been voted had not been fully complied with; and hence they could not have been, and were not, certified by the auditor as registered bonds. The bonds have found their way into the hands of an innocent holder for value, who did not know that the bonds bore a false date.

If the bonds bore date after the act of March 30, 1872, and had not been registered, it is plain, we think, that they would have no "validity," and hence could not support an action in the hands of any person. Pars. Bills & N. 218, 276, 279. But they are antedated, and the question is whether they have validity in the hands of the innocent purchaser. Upon the best consideration we have been able to give, our conclusion is that the bonds cannot be enforced. The case comes within the doctrine, which is well settled, that where a statute declares absolutely and without exception that a contract or bond or note is void, it is void into whosesoever hands it may come. This statute declares that no unregistered bond shall be valid or be negotiated. Bonds must first be registered. Without registration they "obtain no validity." Such is the statute. A declaration that bonds shall have no validity is equivalent to declaring them to be void.

Is the county estopped to set up this defence? We think not. The case is to be distinguished from those decided by the

supreme court of the United States, in which it is held that the frauds of the officers cannot be visited upon the innocent bondholder, and falls within the case of Bayley v. Taber, 5 Mass. 286. In that case it was held, where a statute enacted that promissory notes of a certain description, "made or issued" after a specified day, should be "utterly void, and no action should be sustained thereon," that it was competent to the makers of such notes, when sued upon notes bearing date before the day fixed by the statute, to prove that they were, in fact, made and issued after such day.

The principle of that case is the same as in the case at bar, and if that is a sound principle when applied to the individual maker of prohibited paper, it should apply with at least equal force in favor of public bodies, where one or two officers, without the consent of the others, may, as in this case, combine to evade the law, the other officers being innocent of wrongful participation.

The principle involved is one of great consequence. For illustration: Loose and general powers have been heretofore given in this state to municipalities and counties to issue such bonds. This power has been taken away by the new constitution. Can the protective provisions of that instrument be evaded and rendered useless by the mere fraudulent act of the officers of the county in antedating the bonds. If so, the power to defraud is endowed with a fearful vitality, which survives the prohibition of the constitution, and threatens to become immortal.

Judgment for the defendant.

[NOTE. On appeal to the supreme court, the decree of the circuit court was affirmed. In speaking for the court, Mr. Chief Justice Waite said: "When the bonds now in question were put out, the law required that, to be valid, they must be certified to by the auditor of the state. In other words, that officer was to certify them, before their execution was complete, so as to bind the public for payment. * * * Antedating, under such circumstances, partakes of the character of a forgery, and is always open to inquiry, no matter who relies on it. The question is one of the authority of him who attempts to bind another. * * * It matters not that when the bonds were voted the registration law was not in force. Before they were issued, it had gone into effect. It did not change in any way the contract with the railroad company. * * * All the legislature attempted to do was to provide what should be a good bond, when issued. There was nothing changed, but the form of the execution." Anthony v. County of Jasper, 101 U. S. 693. Also see Douglass v. Pike Co., Id. 677.]

ANTHONY. (UNITED STATES v.) See Cases Nos. 14,459 and 14,460.

ANTHONY KELLY. (The SCOTTISH BRIDE v.) See Case No. 12,551.

ANTHONY MANGIN. The. (UNITED STATES v.) See Case No. 14,461.

ANTHRACITE, The, (HERN v.) See Case No. 6,412.

ANTHRACITE INS. CO., (GERMOND v.) See Case No. 5,365.