## SMITH & al. vs. HUBBS *Administrator of* HUBBS.

A. furnished goods to B. at the request of C. to hold and sell in the name, and as the agent of C. under a fraudulent arrangement between the three, to protect the goods from attachment at the suit of B's creditors. In a suit brought by A. against C. to recover the price of the goods, it was *held,* that it was competent for C. to allege and prove the fraud, in defence of the action — and that B. was admissible as a witness for that purpose.

ASSUMPSIT, on account annexed to the writ for goods sold and delivered. They were delivered to one *Silas M. Weymouth;* and the plaintiffs contended, and stated in the opening of the cause to the jury, that they were delivered to *Weymouth* on the credit of the defendant's intestate, and his promise to pay for them. This was denied by the defendant.

The plaintiff then called *Oliver B. Dorrance* as a witness, who testified, that on the 21st *Sept.* 1829, the intestate, who was a seafaring man, and *Weymouth,* came to his store and applied for goods to be delivered to *Weymouth;* — that he let *Weymouth* have a small assortment, say to the amount of three or four hundred dollars, and charged them to the intestate, who said he was going to supply *Weymouth* with goods to fill up a small store; — that *Weymouth* made the selection of goods; — that one or the other of them said that *Smith & Brown,* (the plaintiffs,) were to furnish the West India goods:

— that *Weymouth* soon after opened a store ; — that the witness supplied him with goods from time to time, and charged them to the intestate, *Hubbs* ; — that he should not have credited *Weymouth* ; — that he had settled with *Weymouth,* who had paid him in full.

*George E. Hacker,* also called by the plaintiff, testified that he was clerk to *Weymouth* in his store, which was kept by him *as agent,* and it was so expressed on his sign ; — that it was kept in *Hubb's* name ; — that the invoice of goods purchased were in his name, and bills against purchasers were made out in *Weymouth's* name as *agent,* and some of the notes were thus taken ; — that *Hubbs,* the intestate, once furnished money to the amount of $273, for which *Hubbs* asked, and *Weymouth* gave a receipt ; — and at another time $110, by way of an or-der on a *Mr. Lunt* ; — that *Weymouth* charged himself with what he took from the store.

*Weymouth,* who testified in behalf of the defendant, stated that *Brown,* (one of the plaintiffs) informed him of a vacant store, and advised him to take it ; — that he told *Brown* he was embarrassed by the failure of the *Merrills* ; that *Brown* told him he had better begin again and try ; that there would be no difficulty ; that the witness might get his father's name ; that he, *Brown* should be willing to have the witness trade un-der him, as matter of form, but they had so much business of their own they did not wish it. That *Brown* also named *Wil-liam Hubbs,* the intestate, as one who might make such an ar-rangement ; — that some days after, the witness met *Brown* and *Hubbs* and had some conversation with them ; that *Brown* told *Hubbs* he did not wish any one to lend his name for se-curity of payment ; observing that he was willing to look to the witness for payment ; but wished, or advised the witness only to appear *as agent,* so as to prevent the old creditors of the witness from calling on him ; that soon after all three went into *Smith & Brown's* store, and nearly the same conversation took place there ; that *Hubbs* examined some of the articles purchased ; that he took some notes for goods sold in the name of *Hubbs;* that he bought goods of several other merchants in Portland in his own name ; that since the death of *William*

*Hubbs* he had made several payments to *Smith & Brown,* amounting to about $223.

*Moses Hall* was called by the plaintiffs, and testified that he was one of the assessors for Portland, during the years 1831 and 1832; — that *Weymouth* told him the stock in the store belonged to *William Hubbs;* — that he did not know which was taxed for it, but whoever was, he, *Weymouth,* should pay the tax.

The counsel for the plaintiffs objected to *Weymouth* as a witness, or rather to his competency to testify to the arrangement by him stated, with *Smith & Brown;* — contending that such an arrangement was a fraud and conspiracy to deceive and injure the creditors of *Weymouth;* that though such an arrangement, if proved by legal evidence, would defeat the plaintiffs' action, still that *Weymouth* could not be admitted as competent to prove the fraud and conspiracy.

The *Chief Justice* however overruled the objection, and the jury returned a verdict in favour of the defendant — the case being reserved for the opinion of the whole Court upon the correctness of this ruling of the presiding Judge.

There was also a motion filed by the plaintiffs' counsel for a new trial, because the verdict was against evidence.

*Longfellow,* for the plaintiffs, contended that *Weymouth* was incompetent to testify to the facts, for the proof of which he was called, because he would thereby be testifying to his own fraud. It would be against the policy of the law to permit it. *Churchill v. Suter,* 4 *Mass.* 156.

*Weymouth* was not only incompetent, but *the evidence* itself was inadmissible. — Not competent for the defendant to set up the fraud of his intestate in the defence of this action. A third person might avail himself of it, and take the property, but *a party* to the fraud cannot. *Roberts v. Roberts,* 2 *Barn. & Ald.* 367; *Montefeori v. Montefeori,* 1 *Wm. Bl. R.* 363; *Osborne v. Moss,* 7 *Johns. R.* 161; *Bac. Abr. tit. Fraud, p.* 307.

A contract, though fraudulent, is binding between the parties to it, and may be enforced, unless the plaintiff is obliged to disclose the fraud in seeking his remedy. A defendant cannot al-

lege and prove his own turpitude in defence, and thereby discharge himself from an obligation otherwise legal.

The verdict ought also to be set aside, because it is against the weight of evidence.

Mr. *Longfellow* here went into a particular examination of the testimony, and endeavoured to maintain the position taken.

*Fessenden & Deblois,* for the defendant.

The facts in the case do not show any attempt to defraud the creditors of *Weymouth.* The debts due to his then existing creditors had been incurred long before this transaction — they therefore, could not be deceived by it — those credits had not been given on the faith of these new goods. Nor could the new creditors be deceived — no false credit was given *Weymouth* — he did not pretend to the trading community, that he owned the store and goods, but the contrary.

But if the agreement between the plaintiffs and *Hubbs* and *Weymouth* was fraudulent, then a demand arising out of such contract will not be enforced by a court of law. And it is not only competent for the defendant to avail himself of this defence, but he may show the fraud by *Weymouth* himself. In support of which, they cited, *Jordan v. Lashbrook,* 7 *T. R.* 601 ; *Stark. Ev.* 2, 87, *in note; also pages* 17, 18 ; *Clark v. Shee & al. Cowper,* 197 ; 2 *Ld. Raym.* 1008 ; *Ward v. Mauns,* 2 *Atkins,* 228 ; *Bean v. Bean,* 12 *Mass.* 20 ; *Loker v. Haynes,* 11 *Mass.* 498 ; *Hill v. Payson & al.* 3 *Mass.* 559 ; 1 *Phillips Ev.* 32, *and cases there cited; Goodwin v. Hubbard,* 15 *Mass.* 210 ; *Wait v. Merrill,* 4 *Greenl.* 102.

Where both parties are equally guilty, the maxim of law is *in pari delictu, potior est conditio defendentis.*

Where one has paid money to induce another to do an illegal act, the payer cannot recover it back. The cases cited by the counsel on the other side are of this kind. There is a marked distinction in this respect, between contracts *executed* and contracts *executory.* If the money be not paid in the case above supposed, the facts may be shown and payment resisted — but if paid it cannot be recovered back.

As to the motion to set aside the verdict as against evidence,

they contended, that if there was any evidence on the part of the defendant, which uncontradicted would authorise the jury to find a verdict for him, then it should not be disturbed. It should be an extreme case to authorise the Court to set aside a verdict as against the weight of evidence. The present, certainly not such an one. On the contrary, the weight of evidence, it was contended, was entirely in favour of the defendant.

The opinion of the Court was at a subsequent term delivered by

MELLEN C. J. — The motion for a new trial, predicated on the report of the presiding Judge, has been placed, in the argument, by the counsel for the plaintiffs, on two grounds — *viz.* :

1. That by law it was not competent for the defendant to set up the defence which he was permitted to make : —

2. That *Weymouth*, in support of the defence, was an inadmissible witness. The counsel contended that both objections were well founded, because the *intestate* and *Weymouth* were both parties to the fraudulent arrangement to which *Weymouth* testified. And the counsel for the defendant, on his part, contended that the arrangement abovementioned was *not* fraudulent and illegal. — The correctness of this position, we apprehend cannot be maintained on any sound principles ; for the object in view of the parties was to secure and protect the property that was purchased of the plaintiffs, as well as of other persons, and placed in the store, from the *old*, that is, the *then existing*, creditors of *Weymouth* ; under false appearances to deceive them, and thus to defraud them. Surely such a transaction cannot be sanctioned in a court of justice. The design of all three, according to the finding of the jury, was, in reality, that *Weymouth* was to be considered to all intents and purposes as the purchaser of the goods ; and then they were to be placed by him, under the cover of the name of the intestate, and, to appearance, as *his* property. Such is the real nature of the transaction, as the jury must have found it : it thus assumes the essential character of a fraudulent sale by a debtor, to conceal his property from his creditors ; in the formation and execution of which design all three of the parties were

aiding and acting in concert. Nine times in ten, in similar cases, the object is to defraud *existing*, not *future*, creditors. *Howe v. Ward*, 4 *Greenl.* 195. The next inquiry is, whether the plaintiffs' *first* ground of objection, above stated, is tenable. The argument is, that no man shall defend himself by aleging and proving his own turpitude. The counsel for the plaintiffs admits that where the fraud that poisons, or the illegality that destroys a contract is disclosed and proved by him who claims the benefit of it, there the *other* party, attempted to be charged by such contract, may avail himself of such fraud or illegality to defeat it. But he contends that when a plaintiff has proved the contract on which he has declared, and which appears to be fair and legal, the defendant shall not be permitted, by way of defence, to prove that the contract was fraudulent and illegal between the plaintiff and himself, and thus avail himself of his own wrong and violation of law. Notwithstanding the emphatical manner in which the counsel contended for the above distinction, we are not aware of its existence, except under a limitation which is not applicable to the case before the Court. That limitation we will state. There is a marked and settled distinction between *executory* and *executed* contracts of a *fraudulent* or *illegal* character. Whatever the parties to an action have *executed* for fraudulent or illegal purposes, the law refuses to lend its aid to enable either party to disturb. Whatever the parties have fraudulently or illegally *contracted to execute*, the law refuses to compel the contractor to execute or pay damages for not executing; but in both cases leaves the parties where it finds them. The object of the law in the *latter* case is, as far as possible, to prevent the contemplated wrong; and in the *former*, to punish the wrongdoer, by leaving him to the consequences of his own folly or misconduct. The case of *Doe on dem. of Roberts v. Roberts*, cited from 2 *Barnw. & Ald.* 367, differs from the case under consideration. It is a case of an *executed* contract. *George Roberts* made a deed to the plaintiff, of the premises in question, for which ejectment was brought against the grantor's widow, and on cross examination of a witness to the deed, it appeared that it was made on an illegal consideration. On a question reserv-

ed, the Court disallowed the defence, on the ground that a grantor could not impeach his own deed on account of his own fraud. To make this case more plain, suppose the grantor had brought an action against the grantee to recover the land back on the ground of fraud ; it is very clear he could not recover against his own conveyance, though it was a voluntary and fraudulent one ; for it was good between the parties and unaffected by the statute of *Eliz.* Yet if in the case reported the Court had sustained the defence, on the ground of fraud between the grantor and grantee, the title of the latter would have been defeated and the heir of the grantor would have held the land, in direct opposition to the principle above stated, as to *executed* contracts of a fraudulent or illegal character. The case from *Wm. Bl.* 363, *Montefeori v. Montefeori,* was of the same nature as *Doe v. Roberts.* The abstract of the case of *Osborne v. Moss* is in harmony with the case of *Doe v. Roberts :* it is in these words, " where a person makes a fraudulent convey- " ance of his goods to another, for the purpose of defrauding " his creditors, and dies intestate, the conveyance though void " against creditors, is good against the intestate ; and an action " may be maintained against the administrator for the goods." This is the case of an *executed* contract also. — With respect to the supposed distinction abovementioned, we have not found it stated in any of the numerous cases we have examined, which relate to contracts of an *executory* kind, and which were fraudulent or illegal. In many of them there is a statement of the facts on which the questions of law arose, without an intimation by which party the proof of them was introduced. In some cases of special contract, the fraud or illegality appeared on the face of it. In others, as cases for money had and received, the facts are necessarily disclosed in the opening of the cause. In others, a fair contract and ground of action is displayed in the opening, and it must, from the nature of the case, have been the testimony on the part of the defendant that disclosed the fraud or illegality to the Court. In numerous other cases it appears distinctly that the evidence, destructive of the plaintiff's right to recover, was introduced by the defendant, though he was a party to the fraud or illegality. The following

cases support the last position.   *Cockshot v. Bennett,* 2 *T. R.*
763 ; *Lightfoot & al. v. Tenant,* 1 *Bos. & Pul.* 55.   It was
an action on bond, and the defendant pleaded the facts which
disclosed the poison and defeated the action.   *Clugar v. Pan-*
*aluna,* 4 *T. R.* 466, — a smuggling transaction — proved by the
defendant.   *Waymell v. Reed & al.* 5 *T. R.* 599, a case of the
same kind ; and the smuggling arrangement between the parties
proved in the same manner.   *Howard v. Hodges,* 1 *Bos. &*
*Pul.* 341, *note ;* 1 *Selw. N. P.* 79 ; *Bowry v. Bennel,* 1 *Camp.*
348 ; *Girardy v. Richardson,* 1 *Esp. Cas.* 13 ; *Bayley & al.*
*v. Taber,* 5 *Mass.* 286.   In *Holman v. Johnson,* Cowp. 341,
*Lord Mansfield* says,  " The objection that a contract is im-
" moral or illegal as between plaintiff and defendant, sounds at
" all times very ill in the mouth of the defendant.   It is not for
" *his* sake, however, that the objection is ever allowed ;  but it
" is founded on general principles of policy, which the defen-
" dant has the advantage of, contrary to the real justice, as be-
" tween him and the plaintiff, by accident, if I may so say.
" The principle of public policy is this, *ex dolo et malo non ori-*
" *tur actio.*   No Court will ever lend its aid to a man who founds
" his cause of action upon an immoral or illegal act.   If from
" the plaintiff's own showing *or otherwise,* the cause of action
" appears to arise *ex turpi causa,* or the transgression of a pos-
" itive law of this country, the Court says he has no right to be
" assisted.   Where both are equally in the wrong, *potior est*
" *conditio defendentis.*"      *Starkie, vol.* 2, *page* 86, says,
" Where the illegal consideration is set forth upon the record,
" the objection may be taken either by demurrer, or in arrest of
" judgment.   But where it does *not* appear on the record, *the*
" *defendant may shew* that the claim is in reality founded upon
" an illegal and noxious agreement."      In the case of the *In-*
*habitants of Worcester v. Eaton,* 11 *Mass.* 368, *Parker C. J.*
in delivering the opinion of the Court, says,  " It appears to be
" the settled law in *England,* and we are satisfied it is also the
" law here, that where two persons agree in violating the laws
" of the land, the Court will not entertain the claim of either
" party against the other, for the fruits of such an unlawful bar-
" gain.   If one holds the obligation or promise of the other, to

" pay him money, or do any other valuable act, on account of
" such illegal transaction, *the party defendant may expose the*
" *nature of the transaction to the Court*" — and thus defeat
the action.

We apprehend that the authorities we have collected and stat-
ed in this opinion, are sufficient to shew that there is no such
legal distinction as the counsel for the plaintiffs has endeavour-
ed to establish, as to the source from which the evidence of
covin or illegality is to be derived, in actions on *executory con-
tracts*.   We may, however, add to the list, the familiar defence
of usury in actions on contracts : in all such cases, the evidence
of the usury is always introduced by the defendant to prove the
illegality of the contract.   The defence which destroys a gam-
ing note is always sustained by proof adduced by the defendant,
though he is guilty of a violation of law, and relieves himself
from his obligation by such violation in concert with the plain-
tiff.   For the reasons thus given, we are of opinion that it was
competent for the defendant to set up the defence which he was
permitted to make.

As to the *second* ground of objection, namely, the alleged in-
competency of *Weymouth* to testify in support of the defence,
there seems to be no room for hesitation.   In *Hill v. Payson*,
3 *Mass.* 559, it was decided that the grantee of a deed was a
good witness to prove the deed without consideration and void
against creditors.   In *Loker v. Haines*, 11 *Mass.* 498, it was
decided that the grantor in a deed, if not interested, was a good
witness for a similar purpose.   The same principle was decided
in the above cited case of *Inhabitants of Worcester v. Eaton.*
So also in *Bean v. Bean*, cited in the argument.   It would
seem to be a sound principle, that the same reasons and policy
which render it proper and salutary to permit a partner in the
fraud or illegality in the contract, when sued upon it, to dis-
close and prove such fraud or illegality by way of defence to
the action, render it proper for any other partner, except the
plaintiff, to be a good witness in support of the defence.   On
the whole, we are all of opinion that the ruling of the Judge
was correct, and that the motion for a new trial cannot be sus-
tained for any reasons appearing on the report of the Judge.

The only remaining question is, whether the verdict ought to be set aside, as being against evidence, as stated in the motion on file.   On this point, we need say no more than that the testimony was contradictory, and therefore, peculiarly proper for the exclusive consideration of the jury.   We see no ground for disturbing the verdict on account of the conclusion to which they arrived.

*Judgment on the verdict.*