## SUSIE KIRKPATRICK

*v.*

## FRANK H. CLARK.

*Filed at Springfield March 31, 1890.*

1. EJECTMENT—*equitable title—in defense.* In ejectment, the equitable title of the defendant to the land can not be shown in defense. The rule is well settled that a trustee may recover, in ejectment, the lands affected by the trust, even as against the *cestui que trust.* Therefore, proof on the trial that the defendant paid all the purchase money for land, and had the deed made to the plaintiff, is wholly immaterial.

2. SAME—*proof of legal title—by parol evidence.* On the trial of an action of ejectment, the defendant, as a witness, was asked whether the plaintiff, at any time, was in fact the owner, and in possession of the property, to which the court sustained an objection : *Held,* that it was incompetent to prove the legal title to land by parol evidence.

3. SAME—*impeaching deed for fraud—parol evidence.* In ejectment, to recover the possession of a lot, the defendant may defeat a recovery by showing that the plaintiff's deed was made to him for the purpose of hindering, delaying and defrauding the creditors of the defendant, or for any other illegal purpose.

4. FRAUDULENT OR ILLEGAL CONTRACT—*all remedies withheld.* It is a general rule, subject to some exceptions, that when parties are concerned in illegal agreements, they will be left without remedy against each other, provided they are *in pari delicto.* The law refuses to aid either party, but leaves them where it finds them. This rule is applied to executed transactions as well as to executory, and is enforced by courts of law as well as courts of equity.

5. So where one purchases land with his own money, and, for the purpose of hindering or delaying his creditors, enters into a fraudulent arrangement or conspiracy with another to have the land conveyed to the latter, which is done, leaving the purchaser in possession, the transaction will be illegal, and the courts will aid neither party, and the holder of the legal title thus acquired can not recover the possession of the land by ejectment against the original purchaser, and the latter can not compel an execution of the trust.

6. FRAUD—*between husband and wife—title of wife's land put out of reach of the husband.* It is no fraud on a husband for his wife to have land purchased with her separate means, or derived from sources other than her husband, conveyed to a trustee, for the sole purpose of placing it beyond his control, and having it held for her separate use.

7. Under our statute, if land is conveyed to a wife directly, it will vest in her husband no right or interest except an inchoate right of dower, and it is no fraud on him if the wife, in purchasing real estate, has the title conveyed to a trustee, for the express purpose of preventing such right from attaching.

APPEAL from the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON & WHITLOCK, for the appellant:

The question is, whether fraud of this kind can be proven in an action of ejectment. The deed being made to Clark to defraud creditors of the defendant, there can be no affirmative relief to either party, either in law or in equity. The law will leave the parties where they have placed themselves. Story's Eq. Jur. sec. 298; *McCullom* v. *Gourlay*, 8 Johns. 147; *Phelps* v. *Decker*, 10 Mass. 274; *Gregory* v. *King*, 58 Ill. 169; *Miller* v. *Marckle*, 21 id. 152; *Winston* v. *McFarland*, 22 id. 38.

A court of law, in an action at law, will take cognizance of fraud. *Jamison* v. *Beaubien*, 3 Scam. 113; *Rogers* v. *Brent*, 5 Gilm. 573.

The plaintiff in ejectment must recover on the strength of his own title. *Boyer* v. *Thornburg*, 115 Ill. 540.

If the evidence offered had been admitted, then it would have appeared that Clark had no title cognizable at law. That evidence *aliunde* the deed, in ejectment, is admissible, see *Sloan* v. *Petrie*, 16 Ill. 262; *Stow* v. *Russell*, 36 id. 35.

Mr. EDWARD L. McDONALD, for the appellee:

The question, who was the owner of the lot, was not proper. Title can not be proved by the opinions of witnesses.

No question of the consideration of deed, or who paid the purchase money, can ever be admissible in ejectment. *Escherick* v. *Traver*, 65 Ill. 381.

A deed absolute on its face can not be shown, in an action of ejectment, to be only a mortgage. *McGinnis* v. *Fernandes*, 126 Ill. 231; *Finlon* v. *Clark*, 118 id. 32.

Evidence to show some equity in the defendant was not admissible, for the reason that the legal title must prevail at law. 2 Greenleaf on Evidence, sec. 331; Adams on Ejectment, 32; *Rountree* v. *Little,* 54 Ill. 323; *Johnson* v. *Watson,* 87 id. 535; *Fleming* v. *Carter,* 70 id. 286.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action of ejectment, brought by Frank H. Clark against Susie Kirkpatrick, to recover lot 27, in Tilton & Cassell's addition to Jacksonville. A trial was had on a plea of not guilty, resulting in a verdict and judgment in favor of the plaintiff, and the defendant now appeals to this court.

The plaintiff, at the trial, made proof, under the twenty-fifth section of the statute in relation to ejectment, that he claimed title through one Matthew Ashelby, a common source of title with the defendant, and then read in evidence a warranty deed from said Ashelby and wife, duly acknowledged and recorded, conveying said lot to him. The defendant's counsel then called the defendant as a witness in her own behalf, and after she had testified that she had been acquainted with the plaintiff for about eleven years, and that when she first became acquainted with the lot in question, it was the property of Mr. Ashelby, she was asked the following questions:

"State whether or not, at the time this deed was made to Mr. Clark, you were in a controversy with your husband, and whether or not the deed was made to Mr. Clark by arrangement between you and Mr. Clark, so as to prevent any claim your husband might have on the property if the deed was in you?

"You may state whether or not Mr. Clark at any time in fact was the owner of and in possession of that property?"

These questions being both objected to by the plaintiff's counsel on the ground of incompetency and immateriality, were excluded, and thereupon the defendant's counsel made to the court the following statement and offer:

"We expect and offer to prove by this witness, and two other witnesses, Mr. and Mrs. Rogers, who have been sworn and are now in court, that they heard a conversation between Mr. Clark and Mrs. Kirkpatrick, in which it was stated that Mr. Clark had no interest in the property and never had any; that the deed was made to him for the purpose of hindering and defrauding creditors and the husband of Mrs. Kirkpatrick, and that Mr. Clark then admitted that every cent that Mrs. Kirkpatrick ever owed him had been paid, and that he had no claim to the property—no right to it, and that the property in controversy in this case was held by him only for the purpose of hindering and delaying creditors; that she asked him to give her a deed to the property and he refused to do it, but admitted that he had no title to it, and that he only held it to cover it up so that the creditors could not get it, and also to prevent her husband from having any right to it."

The evidence thus offered being objected to as incompetent, was excluded, and counsel then further offered to prove by Mrs. Kirkpatrick "that she went in company with Mr. Clark to Mr. Ashelby and requested Mr. Ashelby to make the deed to Mr. Clark for the property, but did not tell Mr. Ashelby the reason for its being made to Mr. Clark; that Mrs. Kirkpatrick paid in full the consideration of said deed." This evidence also being objected to for the same reason, was excluded. Exceptions were duly preserved by the defendant to the rulings of the court excluding said evidence, and said rulings are the only errors now assigned upon the record.

A considerable portion of the evidence offered was clearly incompetent or immaterial or both. Thus, the question put to the witness as to whether the plaintiff had ever been in fact the owner of the property in question, if understood as calling for the legal ownership of the lot, was incompetent, as the legal title to lands can not be proved in that mode. If understood as calling for the equitable title, it was immaterial, as in this form of action, only legal titles can be investigated.

So of the question whether the deed was not made to the plaintiff by arrangement between him and the defendant, with a view to keeping said lot free from any claim the defendant's husband might have thereon in case the title was taken in her name. The evidence called for by that question would simply have tended to show that the plaintiff took and was holding the title to said lot as trustee for the defendant. Her equitable title thus attempted to be shown was quite immaterial, since it constituted no defense to the action. The rule is well settled that a trustee may recover in ejectment the lands affected by the trust, even as against the *cestui que trust.* In *Reece* v. *Allen,* 5 Gilm. 236, this court said: "A court of law may indeed investigate some questions of fraud, and when proved, treat a deed as a nullity and conveying no title, as where a party was induced to execute a deed supposing it was another paper, but in general it will not go behind the naked legal title and inquire where the equities are. Even in a case of a naked trustee, the law is so strenuous for the legal title, that it enables the trustee to recover in ejectment against the *cestui que trust.* See also *Kirkland* v. *Cox,* 94 Ill. 400 ; Sedgwick & Wait on Trial of Title to Land, sec. 222, and cases cited in notes.

If it be said that the purpose of said question was to elicit evidence tending to show that said conveyance to the plaintiff was a fraud upon the rights of the defendant's husband, it may be answered that, even admitting that proof of such fraud would have been material, said evidence would have had no tendency to prove it. If the lot in question had been conveyed directly to the defendant, it would have vested in her husband no right or interest except an inchoate right of dower, and it was no fraud upon him if his wife, in purchasing the lot had the title conveyed to a trustee for the express purpose of preventing such right from attaching. Even at common law where the husband was entitled to the possession and enjoyment of his wife's lands during their joint lives, it was never supposed to be a fraud upon his rights for his wife to have

lands purchased with her separate means, or derived from sources other than her husband, conveyed to a trustee, for the sole purpose of placing them beyond his control and having them held for her separate use, and such trusts were habitually resorted to for that purpose. But under our statute a married woman is entitled to the sole possession and enjoyment of her lands, free from the interference and control of her husband, the husband's right of dower, even after it has become vested, being imperfect and incapable of assertion or beneficial enjoyment until after her death. How then can he be said to have rights in lands which his wife does not yet own, but which she contemplates purchasing, which it would be a fraud upon him to deprive him of? Dower in lands which the wife does not yet own is an interest to which the husband has neither a legal, equitable or moral right, and the wife is entirely at liberty to so manage her purchases made with her own means, if she can, as to prevent his acquiring such right.

A more difficult question is raised by that portion of the offer of the defendant's counsel in which they proposed to prove by said witnesses, that the lot in question was paid for by the defendant, but that by arrangement between her and the plaintiff, the conveyance was made by Ashelby to the plaintiff with intent to hinder and defraud the defendant's creditors, such intention being participated in by both the plaintiff and defendant. It is a general rule, subject it is true to certain exceptions, that where parties are concerned in illegal agreements, they are left without remedy against each other, provided they are *in pari delicto.* The law in such cases refuses to lend its aid to either party, but leaves them where it finds them to suffer the consequences of their illegal or immoral acts. This rule is ordinarily expressed by the maxim, *ex dolo malo,* or, *ex turpi causa, non oritur actio,* or by the maxim, *in pari delicto potior est conditio defendentis et possidentis.* These maxims are applied to executed transactions as well as

to those which are executory, and are enforced by courts of law as well as courts of equity. As said by the Chancellor in *Bolt* v. *Rogers*, 3 Paige, 154: "Wherever two or more persons are engaged in a fraudulent transaction to injure another, neither law or equity will interfere to relieve either of those persons as against the other, from the consequences of their own misconduct." In *Smith* v. *Hobbs*, 10 Me. 71, the court say: "There is a marked and settled distinction between executed and executory contracts of a fraudulent or illegal character. Whatever the parties to an action have executed for fraudulent or illegal purposes, the law refuses to lend its aid to enable either party to disturb. Whatever the parties have fraudulently or illegally contracted to execute, the law refuses to compel the contractor to execute or pay damages for not executing, but in both cases leaves the parties where it finds them. The object of the law in the latter case is, as far as possible, to prevent the contemplated wrong; and in the former, to punish the wrongdoer, by leaving him to the consequences of his own folly or misconduct." See also, *Miller* v. *Marckle*, 21 Ill. 152; *Nellis* v. *Clark*, 20 Wend. 24; *Howell* v. *Fountain*, 3 Ga. 176; *Carey* v. *Smith*, 11 id. 539; *White* v. *Crew*, 16 id. 416; 1 Story's Eq. Juris. sec. 298.

· If it be true, as the evidence offered would tend to show, that the defendant purchased the lot in question of Ashelby with her own money, but, for the purpose of hindering and defrauding her creditors, entered into a fraudulent arrangement or conspiracy with the plaintiff to have said lot conveyed to him, said transaction was illegal, and within the condemnation of the fourth section of our present Statute of Frauds. The transaction being consummated by the execution of the conveyance to the plaintiff, leaving the defendant in the possession which she had previously obtained under a demise from Ashelby, the law should leave them both where it finds them. The defendant clearly could not be permitted to go into a court of equity to compel an execution by the plaintiff of his trust,

and it would seem that, upon the same principle, the plaintiff should be debarred from coming into a court of law to use his ill-gotten title for the purpose of recovering of the defendant the possession.

We know of no case where this precise question has been decided by this court, but cases are to be found where the reasoning adopted has a tendency to support the view above expressed. The case of *Rogers* v. *Brent*, 5 Gilm. 573, was ejectment brought by the holder of a patent from the United States, issued to him as assignee of the certificate of entry, against the holder of a title derived through a sheriff's deed executed upon a sale of the land on execution against the original holder of said certificate prior to its assignment to the plaintiff. The court, in holding that the assignment of the certificate and the patent subsequently issued thereon were fraudulent and void as to the defendant, said: "The law is, that the common law courts may entertain jurisdiction of questions of fraud, and that a conveyance, whether it be by deed from an individual, or by patent from the government, although executed with all the forms of law, when obtained in fraud of the rights of others, may, in an action of ejectment, be disregarded by the court as void at the instance of the injured party, or those holding under him." In the course of the opinion, it is said, by way of argument, that, "It would hardly have been denied that a court of law would treat as a nullity, a deed to the assignee, when it was established that the assignment was made and the deed obtained to defraud creditors, or to defeat a title previously obtained by a sale under an execution against the assignor."

In *Jamison* v. *Beaubien*, 3 Scam. 113, which was also an action of ejectment, the plaintiff's proof of title consisted of a certificate of pre-emption, and certain evidence tending to impeach the pre-emption on the ground of fraud being excluded by the trial court, this court, in holding that such exclusion was erroneous, said: "Fraud, it is said, vitiates all acts, as

between the parties to it; nor can there be a doubt that fraud is cognizable in a court of law, as well as equity. It is an admitted principle, that a court of law has concurrent jurisdiction with courts of equity, in cases of fraud. The evidence offered went directly to the validity of the certificate of pre-emption purchase. If it had its inception in fraud, it was certainly competent for the defendant to show the fact; and if the officers granting it were parties to the fraudulent act, it was no doubt void, and might be impeached in an inquiry in which the pre-emptor was a party."

The case of *Miller* v. *Marckle*, 21 Ill. 152, was a bill in equity for the foreclosure of a mortgage, alleged by the mortgagor to have been executed without consideration, for the purpose of securing his property against his creditors until he could get means to settle with them, and this court, in holding that the defense should have been sustained, said: "If money has been actually paid, or property transferred, and the grantee put in possession, courts will not compel the money or property to be restored, or the party ousted. They will not, on the one hand, undo what has been done, nor on the other, perfect what has been left unfinished. Suppose the position of these parties reversed, and the appellant was seeking by bill in chancery, to rescind the mortgage, and for a surrender of the notes. The court would not interfere—it would leave the parties where it found them, aiding neither. We would say, you executed the notes and the mortgage for a fraudulent purpose—the act is binding on you, and you can not have our aid to compel their surrender. So we say to the appellee here— you have the notes and mortgage—you were a willing party to the proposed fraud—equity aids no iniquity. Had an absolute deed of the premises been made, and the party put in possession, the court would not interfere to oust him." See also *Tyler* v. *Tyler*, 126 Ill. 525.

In the first two of the three cases last above cited, the fraud was set up by parties not *in pari delicto* with the parties against

whom the fraud was charged. Those cases sustain the rule, however, that a court of law will, in an action of ejectment, on proper proof, hold a conveyance upon which a party relies to establish his title to be fraudulent and void, at least where the fraud is charged by one who is not a party to it. In the case last cited the court held that it was proper to grant relief at the instance of a participant in the fraud.

In the present case, if the facts are as the evidence offered would tend to show, the fraudulent transaction has been consummated to the extent of vesting the title in the plaintiff, and leaving the possession in the defendant. Here, according to the rules of law above discussed, they should be left. The defendant clearly can have no remedy to recover the title, and if the plaintiff is permitted in this action to recover the possession, said rules will be applied in all their vigor to the defendant, while the plaintiff will be exempted from their application. His present title without the possession or the means of obtaining it is a barren right. But if a court of law can lend him its aid to recover the possession, his title becomes perfect, at least as against the defendant, and the law, notwithstanding his participation in the fraud, will be to him both a sword and a shield. We are not inclined to so apply the law as to involve an absurdity of this character.

In *Harrison* v. *Hatcher*, 44 Ga. 638, the precise question before us was presented, and we are disposed to concur with the conclusion reached by the court in that case. The action was ejectment, and the plaintiff claimed title under a deed executed to him by the defendant, and the evidence tended to show that said deed was executed by the defendant without consideration and for the purpose of defrauding the grantor's creditors. The defendant asked the court to charge the jury, among other things, in substance, that if said deed was executed by him to defraud his creditors, and that he remained in possession, the transaction was fraudulent, and the defendant could not be ousted of possession, as the court would not

·aid a party to a fraud to assert rights against the other party, .and would not disturb the possession. This charge the court refused to give, and there being a verdict and judgment for the plaintiff, it was held on appeal that the refusal of the court to charge as requested was error. The point thus raised is discussed in its opinion as follows : "On looking into the cases upon this subject, we are satisfied that the rule, *in pari delicto,* .applies to the condition of a defendant in a suit, even though he sets up his own fraud. He is in possession, and the courts will not aid the other party to get possession under a fraudulent deed. They will even permit the defendant to say the deed, under which the plaintiff claims, is a fraud—the result ·of evil practice between him and me—and if this be made out .by the proof, the plaintiff can not recover."

It follows that in the present case, the evidence offered, so far as it tended to show that the deed under which the plaintiff claims title, was executed in fraud of the defendant's creditors, was proper and should have been admitted, and that its ·exclusion was error. For said error the judgment will be re--versed and the cause remanded.

*Judgment reversed.*