DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

MARCH TERM, 1896.

---

JAMES W. HOPE, PLAINTIFF IN ERROR, v. THE LINDEN PARK BLOOD HORSE ASSOCIATION, DEFENDANT IN ERROR.

1. An agreement which controls or restricts, or tends or is calculated to control or restrict, the free exercise of a discretion for public good, vested in one acting in a public official capacity, is illegal and so reprobated by the courts that no redress will be given to a party who sues for himself in respect of it.

2. In an action in which either party to such an agreement seeks redress from the other for his own benefit, he will be left by the courts in the position in which he places himself.

3. If a party to such an agreement, by proof of part of the facts constituting the transaction out of which it grew, makes a *prima facie* case for recovery against another party to the agreement, without disclosing the illegality, the defendant's guilty participation in the transaction will not preclude him from showing that illegality.

---

On error to the Union County Circuit Court.

For the plaintiff in error, *Foster M. Voorhees* and *Frank Bergen.*

For the defendant in error, *Allan L. McDermott.*

627

The opinion of the court was delivered by

THE CHANCELLOR.    The judgment reviewed is in an action upon contract brought by the Linden Park Blood Horse Association to recover from James W. Hope the sum of $5,000 paid by it to him in August, 1893, as hereinafter stated, in which the defendant pleaded the general issue.

The case was tried before the judge at Circuit without a jury.

Errors are assigned upon refusals of the judge to nonsuit and to admit and consider the defence that the money sued for was paid to Mr. Hope in pursuance of a corrupt and illegal agreement.

The plaintiff below proved that it applied to the township committee of the township of Linden, in Union county, to license it to maintain and use a race-course in that township, under chapter 16 of the laws of 1893 (*Pamph. L.*, p. 28), entitled "An act concerning the maintaining of race-courses in this state, and to provide for the licensing and regulating of the same;" that thereafter it was resolved by the township committee, Mr. Hope being a member thereof and voting in favor of the resolution, that the defendant in error be licensed as it requested, for a period of five years, upon conditions stated, and that it pay to the inhabitants of the township of Linden, for the exercise of the privileges granted by the license, the sum of $5,000 annually during the second, third, fourth and fifth years of that term, and that during the first year, it pay $5,000 to aid in the construction of a sewer projected in the township; the sewer referred to was to be the work of a private corporation called the Roselle Sewerage Company; that upon the adoption of the resolution an agent of the defendant in error, who was present at the meeting, prepared his check for $5,000, payable to his own order, and endorsed it to Mr. Hope, to whom it was also delivered; and that in March, 1894, the $5,000 was yet in Mr. Hope's hands, and was demanded of him by the defendant in error.

Upon this proof, the court refused to nonsuit, and then the defendant below proceeded under objection, the decision of

which was reserved, to prove that after the resolutions of license were adopted, in the midst of confusion, some one remarked that there was something yet to be done, and that the reply was that $5,000 was to be paid, and that thereupon the agent of the defendant in error produced a blank check, and discussion arose as to whom it should be drawn; that the treasurer of the township was named and the treasurer of the sewer company was also mentioned, and that it was finally arranged that the check should be given to Mr. Hope, and be left with him to see that it got to the proper parties; also that it was suggested, by the agent of the defendant in error, that in making the check payable to Hope, the word "manager" should be added after Hope's name, but, upon objection, that word was omitted from the check; and also that Mr. Hope was the manager of the Roselle Sewerage Company and a subscriber for its capital stock; and that the corporation was organized to conduct its business for the profit and advantage of its stockholders.

In deciding the case, the judge held that the evidence upon the part of the plaintiff did not show either that there was any illegality in the transaction, or that the transaction was tainted with criminality or in contravention of public policy; that the payment appeared to be a voluntary payment to the defendant, who, therefore, stood as the agent of the defendant in error, charged with the duty of expending the money under its direction, from whom the money might, in legal right, be withdrawn at any time. Hence, he concluded that, at the close of the case of the plaintiff below, a right to recover had been proven.

As to the proofs by the defendant below, Hope, the judge said: "The defence is substantially this: That a stockholder in a private corporation gave his vote as a public officer in discharge of a public duty in consideration that the plaintiff would pay $5,000 into the treasury of the private sewer company which the defendant was engaged in promoting. This is a corrupt agreement, which is as clearly denounced by the law as though the money had been paid to the defendant for

his exclusive benefit, and it cannot be set up in defence to this action.

"If the plaintiff, in order to make out his case, had been compelled to show these facts, the law would not have permitted him to recover back the money paid for such a corrupt purpose. The defendant is no more favored by the law. He cannot introduce such a state of facts into the case on his own behalf and set up his own corrupt action as a legal defence to this suit.

"The defence set up by this testimony is incompetent and inadmissible, and is overruled."

The court then proceeded to give judgment for the recovery of the $5,000, with interest and costs.

The proposition laid down by the trial judge that the transaction which influenced or induced Hope to give his official vote for the license of the defendant in error, was corrupt and unlawful, is not disputed. It is too well established to admit of question that an agreement which controls or restricts, or tends or is calculated to control or restrict, the free exercise of a discretion for the public good, vested in one acting in a public official capacity, is illegal and so reprobated by the courts that no redress will be given to a party who sues for himself in respect of it.

The question now mooted is whether the courts will permit a party to such an agreement to show its corrupt and illegal character in defence of an action against him to recover money paid to him in pursuance of its terms.

The trial judge thought that if one party to such an agreement should make out a *prima facie* case for the recovery back of money paid under it, without exhibiting the illegality, it would not be competent for the person sued, who had been party to the agreement, to show the illegality and defeat such recovery.

The rule is that in an action in which either party to such a contract seeks redress from the other, for his own benefit, he will be left by the courts in the position in which he has placed himself. *Church* v. *Muir*, 4 *Vroom* 320; *Price* v. *Polluck*, 8 *Id.* 44; *Shallcross* v. *Deats*, 14 *Id.* 177, 182.

That rule is the application of the maxim *ex turpi causa non oritur actio.* The maxim has its foundation in the public policy of discouraging illegal and corrupt agreements, by holding them to be void and refusing all judicial aid between the parties to them.

In *Den* v. *Shotwell*, 3 *Zab.* 465, 474, Chief Justice Green used this language : " But in dealing with illegal contracts, courts do not and cannot look to the interest of those who are parties to the illegal transaction. The law regards the welfare of society as paramount, and, in enforcing the law, courts cannot impair its efficiency or cripple its operation by considerations affecting the interest of those who are *particeps criminis.*"

In *Holman* v. *Johnson*, 1 *Cowp.* 343, Lord Mansfield said : " The objection that a contract is immoral or illegal as between the plaintiff or defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice between him and the plaintiff, by accident, if I may say so. The principle of public policy is this—*ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If from the plaintiff's own stating, *or otherwise*, the cause of action appears to arise *ex turpi causa,* or a transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground that the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff, so if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it ; for where both are equally in fault, *potior est conditio defendentis.*"

In *Marlatt* v. *Warwick*, 4 *C. E. Gr.* 454, Mr. Justice Depue said : " The objection is rather that of the public, speaking through the courts, than of the defendant as a party to the contract. The law disallows all proceedings in respect of illegal contracts, not from any consideration of the relative

position and rights of the parties, but upon grounds of public policy."

It appear to me to follow from this view of the foundation of the rule with respect to illegal and corrupt contracts, that the policy which constrains the courts to deny all relief to the parties, demands that when either of those parties shall offer to show that the cause of action springs from an illegal or corrupt agreement, the courts shall admit and consider the legal proofs offered to that end.   It certainly does not further the salutary effect of the rule, that neither party will be aided by the courts, or satisfy as to its impartiality, to exclude proof of some of the facts essential to show the entire transaction and thus exhibit its illegality, merely because they are offered by a *particeps criminis* against whom a *prima facie* case is made by one equally corrupt, who has gained an advantage by presenting to the court garbled and partial proofs, which suppress part of the truth and impose a mutilated state of facts upon the court, in place of the real transaction.

It was said by Chancellor Kent (2 *Kent Com.* 467) that "the courts of justice will allow the objection that the consideration of the contract was immoral or illegal, and be made even by the guilty party to the contract; for the allowance is not for the sake of the party who raises the objection, but is grounded on general principles of policy."

In 2 *Stark. Ev.* 86 it is said : " Where the illegal consideration is set forth upon the record, the objection may be taken either by demurrer or in arrest of judgment.   But where it does not appear on the record, the *defendant* may show that the claim is in reality founded upon an illegal and noxious agreement."

In *Smith* v. *Applegate*, 3 *Zab.* 352, which was a suit upon a promissory note, under a plea of the general issue, the defendants were permitted to show the illegality of the transaction of which the giving of the note was a part.

So, in *Nellis* v. *Clark*, 20 *Wend.* 24, in a suit upon a note, it was held that the defendant might produce proof of like character.   And a similar right in the defendant was recog-

nized in *Harrison* v. *Hatcher*, 44 *Ga.* 638; *Inhabitants of Worcester* v. *Eaton*, 11 *Mass.* 368, and *Smith* v. *Hubbs*, 10 *Me.* 71, 78.

A single word may be added concerning the contention by the defendant in error that Mr. Hope is, under all the evidence offered, to be regarded as its agent, to whom it paid the $5,000 for the purpose of conveying it to those who would build the sewer, from whom it might recall its money at any time prior to his payment thereof over, according to his instruction. We think that the facts do not warrant this position, but that, on the contrary, they clearly show that the payment to Hope was regarded as the final disposition of the money so far as the defendant in error was concerned. Hope was recognized as the manager of the sewer company, and to him, as such, the money was paid in execution of the illegal agreement. It is unnecessary to consider what legal effect the fact contended for, if established, would have.

The judgment will be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Depue, Dixon, Garrison, Gummere, Lippincott, Ludlow, Magie, Barkalow, Bogert, Nixon. 12.