## Cook County Brick Co. v. Labahn Brick Co.

1. LEASES—*Construction. Where two are Executed at the Same Time.* —Where two leases between the same parties are executed at the same time and relating to the same subject-matter, both are to be construed together as one instrument.

2. CONSIDERATION—*Power of a Court of Equity to Inquire into, Regardless of Seals.*—A court of equity will inquire into the real consideration of a contract, or whether there was any consideration, regardless of the rule at law that a seal imports a consideration.

3. INJUNCTION—*Lies to Restrain the Unexecuted Part of an Illegal Agreement.*—Where an illegal contract has been partially executed, a court of equity will grant relief by injunction restraining the enforcement of the unexecuted part of such agreement.

4. REMEDIES—*Distinction Between an Executed and an Executory Illegal Agreement of Corporations.*—The executed dealings of a corporation under an illegal agreement will be allowed to stand, but the rule is otherwise where the agreement is *ultra vires* and remains executory.

5. PLEADINGS—*Allegations of Insolvency — When Unnecessary.*—Where the injury complained of in a bill for an injunction is irreparable, it is not essential to the jurisdiction of a court of equity that it should also contain an allegation of the defendant's insolvency.

6. SAME—*Averments of Irreparable Injury—Loss of Trade.*—An averment of the loss of trade is a sufficiently specific averment of irreparable injury to support a bill for an injunction.

**Bill for an Injunction.**—Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed December 20, 1900.

**Statement.**—This is an appeal from an interlocutory order granting a temporary injunction. August 17, 1900, appellee filed a bill of complaint against appellant, averring, in substance, as follows: March 21, 1893, complainant was incorporated under the general incorporation laws of this State, the object of its incorporation being to manufacture brick, tile and pipes, and immediately became the owner in fee simple of certain premises in Cook county, Illinois, described in the bill, which premises contain large and valuable beds of clay suitable for making brick; and, on

becoming such owner, placed on said premises extensive improvements, machinery and appliances at an expense of about $55,000, for the purpose of manufacturing and selling building and other brick.   Ever since acquiring said premises and making said improvements, complainant has been and now is in exclusive and peaceable possession of the same, and has been and now is engaged on said premises in the business of manufacturing and selling bricks, and in such manufacturing has used the clay on said premises. Complainant's said business is large, extensive and profitable and it has a large number of customers in Cook county and adjacent territory.   The defendant, the Cook County Brick Co., is also an Illinois corporation, and was incorporated in 1897, its objects, as stated in its articles of incorporation, being solely " to maintain and increase wages in the mining, manufacturing and production of articles of merchandise, the cost of which is mainly made up of wages; to establish and conduct a mercantile agency, and to employ those engaged in the manufacture or sale of building, drainage, sewer and road material; to establish, erect, acquire, lease, control and operate machinery, works, yards, and plants for the manufacture and making of brick and other building, drainage, sewer and road material, and to sublet, lease and dispose of the same to others; to manufacture, buy, sell, exchange and deal in brick and all other building, drainage, sewer and road material, and all material used in making the same, and carry on a general merchandise and contracting and manufacturing business."

The defendant has never established or conducted a mercantile agency, or employed any person in the manufacture or sale of building, drainage, sewer or road material; or established, erected or operated any machinery, works, yard or yards or plant or plants, for the manufacture and making of brick or any other kind of building, drainage or sewer or road material, and has never manufactured, bought, sold, exchanged or dealt in brick, or any other kind of building, drainage, sewer or road material, or any other kind of material used in making the same; nor

has it ever at any time carried on a general merchandise or contracting or manufacturing business of any kind; nor does it now do any of the above enumerated acts or things. The said Cook County Brick Company, defendant, has never done any business of any kind as enumerated in the charter thereof, except that it has acquired leases of all or nearly all the brick manufacturing works, yards and plants in the county of Cook, and then leased and demised the same back to the original owners of said works, yards and plants, under certain conditions and restrictions, for the purpose only and with the effect of increasing and controlling the price to the public of bricks in said county of Cook and thereby creating a monopoly or illegal arrangement and combination in restraint of trade.

Said defendant, unlawfully and wrongfully and without legal right or authority, now claims that it has the right to enter into and upon and take possession of complainant's said real estate and premises, and the said improvements thereon for the manufacture of brick, and hold the exclusive possession thereof, and exclude complainant therefrom, and from the possession during the period from the present time until the tenth day of June, 1901; and threatens and gives out that it will peaceably, or if your orator resists such entry, it, the said Cook County Brick Company, will by force and arms and without process of law, enter into and upon your orator's said premises, and take possession of the same, and of the said improvements as aforesaid thereon, and hold the possession of the same for the period from the present time until the tenth day of June, 1901.

If said Cook County Brick Company should so enter into and take possession of complainant's said premises and exclude complainant from the possession thereof for said period of time, or for any considerable period of time, complainant will suffer thereby irreparable injury and damage, in this, among other reasons, that complainant would thereby be disabled from supplying its customers with brick, and the said trade of complainant, which it has at great expense built up and carried on as aforesaid, will be

Cook County Brick Co. v. Labahn Brick Co.

thereby destroyed, its customers scattered and lost, and its trade will be destroyed, and it will thereby be ruined, and suffer great, irreparable and irremediable injury, the extent of which in money it has no means of calculating.

The Cook County Brick Company will execute its said threats, with said consequences, unless enjoined. Defendant claims the right to so enter on complainant's premises by virtue of the following lease: (Here follows copy of lease from the Labahn Brick Co. to the Cook County Brick Co., of date December 15, 1897, of the premises described in the bill, with the appurtenants and all clay and seams and beds of clay in or under the premises, with power to work, mine, raise, manufacture into brick and carry away said clay so manufactured, etc., to have and to hold said premises from December 15, 1897, until June 15, 1901.) The Cook County Brick Co., lessee, agrees to pay for said premises the sum of $13 per annum, in annual payments, the first payment to be made December 15, 1898. By the lease, power is granted to the lessee to sublet the premises or any part thereof, and to cancel the lease at any time on giving thirty days' notice. Said pretended lease was and is void, and was acquired by said defendant for the sole purpose of subletting the premises, and it never entered or attempted to enter into said premises by virtue of said pretended lease, or attempted to use said machinery or plant, but, on the contrary, complainant at the time of the execution of said lease was and ever since has been and now is in exclusive possession of said premises, and engaged in the manufacture of brick thereon. The defendant had no power, legal or equitable, to acquire said lease. Defendant, about November 15, 1897, obtained from the owners thereof leases of other works, yards and plants, each equipped, improved and adapted to the manufacture of brick, similar in form to the said pretended lease from complainant. Said leases were obtained from the following named persons, firms and corporations: (Here follows a list of forty-four names, including complainant, some being the names of corporations, some of individuals, and some of partnerships.)

Said persons, firms and corporations were all separately engaged in the manufacture of brick, and constitute substantially all the persons, firms and corporations then engaged in such manufacture in Cook county. Said leases were obtained by defendant for the sole purpose of enabling it to limit the amount of production of bricks in Cook county and increasing the price thereof, and defendant never took possession of any of said works, yards or plants, nor operated nor intended to operate the same, and made no use of the same, except to sublet them to the owners thereof, and said owners have always remained and now are in possession thereof. Defendant further bases its right to enter upon said premises on a pretended sublease from defendant to complainant, of date December 15, 1897, of said premises and plant, to have and to hold the same from December 15, 1897, until June 10, 1901, by which complainant agreed to pay defendant, as rent and royalty for said premises, $1.50 for each 1,000 bricks manufactured on said premises, or by appellee, and delivered to or used in Cook county, or north of the Joliet branch (or wherever the same is now located) of the Michigan Central Railroad in Lake county, Indiana, excepting brick sold or optioned prior to November 11, 1897, said rent or royalty to be paid on or before the 20th day of each month next succeeding the delivery of said brick. Other provisions of the lease are set out, among which is a provision for re-entry by the defendant (the lessor), forcibly or otherwise, with or without legal process, in case of default in the payment of the " rent or royalty," or any default in any of the lessee's covenants, waiver. of notice from lessor, etc. The sublease also contains a power of attorney to confess judgment for rent or royalty in the event of its non-payment.

The number of bricks manufactured each year by complainant were, and at the time of the execution of said sublease were expected to be, of such amount as to make the said grant of royalty largely in excess of $13 per annum, the amount of annual rent reserved in said pretended lease from

complainant to defendant. In each of the years 1898 and 1899, complainant manufactured in said premises at least 21,000,000 bricks, and in the year 1900 it has manufactured on said premises, brick at the said rate per annum.

August 16, 1900, complainant, by a resolution unanimously passed by its board of directors, revoked and abrogated said pretended lease from complainant to defendant and said pretended sublease from defendant to complainant, and directed complainant's president to notify defendant of such revocation and abrogation, and complainant has refused and will refuse to pay the pretended rent or royalty which will accrue August 20, 1900, and fears that defendant will, in consequence thereof, execute its said threats, etc. During July, 1900, complainant sold and delivered in Cook county, 3,500,000 bricks, and defendant claims that complainant is indebted to it $1.50 on each one thousand of said brick, and that the same will be due August 20, 1900, under the provisions of said pretended sublease. The sole source of income of defendant is the rents or royalties derived by it from said subleases, and it has been accustomed to pay in dividends to its stockholders all or nearly all of said rents or royalties collected by it. Said subleases are void, and the sublessees are under no obligations to pay said rents or royalties, and therefore defendant has no means or resources which could be applied to the payment of any judgment which complainant might recover as damages for the wrongful seizure by it of complainant's premises. Complainant is solvent, has property of value in excess of $100,000 beyond its indebtedness, and is fully able to respond to any obligations which defendant claims complainant is under by virtue of said pretended sublease. Complainant fears that if notice be given of application for injunction, defendant, before the same could be heard, would take possession of complainant's premises, etc. The bill prays for a preliminary injunction, to be made perpetual on the hearing, process, etc.

The bill is verified by the affidavit of complainant's president, who deposes that the complainant would be unduly

prejudiced if the injunction should not issue immediately and without notice.

A preliminary injunction was granted as prayed by the bill, enjoining the defendant from entering or attempting to enter complainant's premises, describing them, and from dispossessing or attempting to dispossess complainant, and from in any manner interfering with complainant in respect to said premises, and from entering complainant's appearance, or making any stipulation for it in any suit brought by the defendant, and from commencing or prosecuting any suit against complainant for the possession of the premises in question.

FELSENTHAL & FOREMAN, attorneys for appellant.

JESSE COX, attorney for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The question to be decided is, whether the court erred in granting a preliminary injunction on the verified bill, the substance of which is set forth in the preceding statement. In considering this question the facts alleged, in so far as well pleaded, must be assumed to be true. The case made by the bill is extraordinary from a legal point of view. It appears that from 1897, when appellant was incorporated, until August 17, 1900, when the bill was filed, it had never done anything to promote its corporate objects as expressed in its articles of incorporation. It is too evident to admit of discussion that appellant did not procure the leases from appellee and others, the owners of brick yards and plants, for any of its numerous corporate purposes; because, at the time it obtained such leases it immediately sublet the demised premises to its lessors, the owners thereof. The lease from appellee to appellant and the sublease from the former to the latter having been made at the same time, and relating to the same subject-matter, must be construed together. Canterberry v. Miller, 76 Ill. 355; Wilson v. Roots, 119 Ib. 379, 386.

So construing them, it appears that appellee, for the expressed consideration of $13, to be paid annually by appellant, agreed to pay to appellant one dollar and fifty cents for each one thousand of brick manufactured on appellee's premises, or by appellee, and delivered or used in Cook county, or north of the Joliet branch of the Michigan Central railroad, in Lake county, Indiana, excepting brick that were sold or optioned prior to November 11, 1897. It is averred in the bill that the number of brick manufactured by appellee each year was, and at the date of the execution of the sublease, December 15, 1807, was expected to be, largely in excess of the value of $13 per annum; that in each of the years 1898 and 1899, appellee manufactured 21,000,000 brick; that in the year 1900 and up to the time of filing the bill, it had manufactured brick at the rate of 21,000,000 per annum, and that in the month of July, 1900, it had sold and delivered 3,500,000 brick.

Construing the lease and sublease together, appellee's agreement, in the last analysis, was to pay to appellant $1.50 per 1,000 on all brick manufactured on appellee's premises, or by appellee, and delivered or used as aforesaid, less $13 per annum. The agreed rent or royalty on 21,000,000 brick is $31,500, and on 3,500,000 brick, the amount averred to have been sold and delivered by appellee in July, 1900, is $5,280, which amount, it is averred, appellant claimed would be due to it from appellee, under the terms of the sublease, August 20, 1900.

On the hypothesis that appellee's board of directors and managing officers are sane, it is absurd to suppose that it leased to appellant, for the sum of $13 per annum, premises on which it had erected and placed valuable buildings, improvements, and machinery and appliances for the manufacture of brick, at an expense, as averred in the bill, of about $55,000. The expressed consideration is so grossly and absurdly inadequate that a court of equity could not regard it otherwise than as equivalent to nothing. It would be equally absurd to suppose that appellee agreed, without consideration beyond that expressed, to pay to appellant

$1.50 per 1,000 of brick manufactured by appellee and delivered or used as heretofore stated. From these considerations we are forced to the conclusion that there must have been some agreement or understanding between the parties other than that expressed in the written instruments—some secret agreement or understanding. Considering the lease and sublease alone, and assuming that they disclose the real agreement, and excluding from view the probability that the sublessees were stockholders of appellant and shared in its dividends, they tend to increase the price of brick in Cook county at least to the extent of $1.50 per 1,000, because if appellee had to pay that sum per 1,000 of brick manufactured by it, it would naturally add it to the selling price of the brick. But it can not reasonably be supposed that the written instruments express the real contract or arrangement between the parties. It is averred in the bill that appellant received similar leases from and made similar subleases to substantially all the brick manufacturers in Cook county, and that it obtained said leases and executed to the owners of the leased premises subleases "for the purpose only and with the effect of increasing and controlling the price, to the public, of bricks in said county of Cook, and thereby creating a monopoly or illegal arrangement and combination in restraint of trade."

A court of equity will inquire what the real consideration was, or whether there was any consideration, regardless of the rule at law that a seal imports a consideration. 1 Pomeroy's Eq. Jur., Sec. 383.

The bill is sufficient to admit of proof that there was a combination of the parties to the leases obtained and the subleases made by appellant to increase the price of brick, and prevent competition in the manufacture, sale and prices of brick in Cook county, and that appellant was a mere instrument or agent for effecting that purpose—in other words, the executive officer of the combination. Such a combination is a criminal misdemeanor and indictable and punishable as such. Hurd's Stat. 1899, p. 615, Sec. 269a.

From the facts that appellant acquired the leases in ques-

tion for some purpose other than the promotion of the object for which it was incorporated, that the owners of the leased premises agreed to the subleases, for substantially no expressed consideration, to pay large rent or royalty, and that the parties diligently concealed and kept secret the real consideration and purpose of the execution of the instruments, it may reasonably be inferred that such purpose was one which will not bear legal scrutiny.

Appellant's counsel contend that if the agreement between appellant and appellee was illegal, the parties were *in pari delicto*, and therefore appellee can have no relief, and cite in support of this contention, Samuels v. Oliver, 130 Ill. 73; Kirkpatrick v. Clark, 132 Ill. 342; McNulta v. Corn Belt Bank, 164 Ib. 427; Bishop v. Am. Preservers' Co., 157 Ib. 284, and Thomas v. Railroad Co., 11 Otto, 71.

In Samuels v. Oliver, the plaintiff, a grain broker, sued for commissions and relied on his contract of employment, which was that he should purchase and sell grain for his principal, for the purpose of cornering the market. Held, that the contract which was the basis of his claim, being for an illegal purpose, he could not recover.

Kirkpatrick v. Clark, *supra*, was ejectment by Clark, who offered in evidence a deed in support of his title. The defendant offered to prove that the deed was executed to Clark for the purpose of defrauding creditors, which proof the trial court excluded. The Supreme Court held the exclusion error, clearly on the ground that the deed, if so made, was illegal and fraudulent, and being so the plaintiff could not be permitted to rely on it in support of his title.

McNulta v. Bank, *supra*, was a suit by McNulta, who was president of the bank, to recover a sum of money voted to him by the bank directors, for the performance by him of duties not appertaining to the office of president, and which sum was a bonus in addition to his salary as president. It was held that the resolution on which the plaintiff relied for recovery was illegal, and that there could be no recovery.

In Bishop v. Am. P. Co., *supra*, the action was replevin, and the plaintiff became possessed of the goods replevied by means of an illegal contract.

In Thomas v. Railroad Co., *supra*, the plaintiff relied on an illegal contract for a recovery.

In the present case appellee does not seek enforcement of the contract. On the contrary it seeks to prevent its enforcement by appellant. The doctrine of *pari delicto* is not applicable in such a case as the present. Evans v. Funk, 38 Ill. App. 441, 462.

Whether appellee has paid anything to appellant under the sublease does not appear, but it does appear that appellee has refused and will refuse to pay the rent or royalty which, by the terms of the sublease fell due August 20, 1900, and therefore the agreement is, as to such rent and royalty, executory.

An illegal agreement having been partially executed, a court of equity will grant relief by injunction restraining enforcement of the unexecuted part of the agreement. McCutcheon v. Meerz Capsule Co., 19 Ct. Ct. App. 108; Spring Co. v. Knowlton, 103 U. S. 49.

The court in McNulta v. Corn Belt Bank, *supra*, recognize the distinction as to remedy between an executed and executory illegal agreement, saying:

" But while the rule is that the executed dealings of a corporation under such a contract will be allowed to stand, yet the rule is otherwise when the contract *ultra vires* remains executory. (Thomas v. Railroad Co., 11 Otto, 71; Kadish v. Garden City, etc., Building Ass'n, *supra*.) In the latter case courts will oftentimes interfere to prevent its enforcement." 164 Ill. 451.

Appellant's counsel object that the bill is defective in not alleging insolvency of appellant. It is averred that if appellant shall enter upon and take possession of appellee's premises, the result will be irreparable injury to appellee. In such case an allegation of appellant's insolvency is not necessary. Edwards v. Haeger, 180 Ill. 99, 108; Village of Itasca v. Schroeder, 182 Ill. 192.

But it is urged that the allegation of irreparable injury

is too general.   This contention can not be sustained.   It is averred that appellee has built up and carries on at its premises a large, valuable and profitable business, and has a large number of customers in Cook county and the territory adjacent thereto, and that if appellant should enter upon and take possession of its premises, it would be unable to supply its customers with brick, and its trade, built up at great expense, would be destroyed and its customers lost, etc.   The averment of loss of trade is a sufficiently specific averment of irreparable injury to support an injunction. 2 Story's Eq. Juris., Sec. 926; Gilbert v. Mickle, 4 Sandf. Ch. 357; Parker v. Manfg. Co., 2 Black, 546, 551, and cases cited; Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9.

Appellee's counsel urges that the leasing and subleasing between appellant and appellee, and the other owners of brick yards, was *ultra vires* as to appellant, but we do not find it necessary to pass on that question on this appeal, as, if the leasing and subleasing were for the purpose and with the effect averred in the bill, this is sufficient to sustain the injunction.

The order appealed from will be affirmed.