GEORGE WYCKOFF v. JOSEPHINE T. WEAVER.

Argued June 25, 1901—Decided November 15, 1901.

1. Courts will not lend their aid to enforce contracts which are directed to the accomplishment of a fraudulent purpose, or entertain suits brought to recover damages for a breach thereof.

2. When it conclusively appears on the trial of an action that it is brought by a fraud-doer to recover his share of the profits of a fraudulent scheme, the court should refuse to permit the trial to proceed further, and direct a nonsuit to be entered.

On error to the Supreme Court.

For the plaintiff in error, *George A. Bourgeois.*

For the defendant in error, *Raymond P. Wortendyke.*

The opinion of the court was delivered by

GUMMERE, J. The judgment which is brought up for review was recovered in an action on contract. The following facts, material to the disposition of the case, appear in the bill of exceptions: One Abigail Weaver, a resident of this state, died in December, 1897, testate. She left no issue. By her will she divided all her estate, share and share alike, between four of the relatives of her deceased husband, one of whom was Mrs. Josephine T. Weaver, the plaintiff in error and defendant below. After the probate of the will, one Myra A. Snook, who was a relative of the deceased husband of Mrs. Weaver, conceiving that she had been improperly excluded by the testatrix from participation in the estate left by her, threatened the legatees that, unless she was permitted to share in the distribution of the estate, she would upset the will, and so cause the estate to pass to the next of kin of the decedent. In order that the threat might not be carried out, the legatees entered into a contract with Mrs. Snook, by the terms of which it was provided that, upon the settlement and distribution of the estate, the same should be separated and divided by the executors into five, instead of four, parts or portions, and by them distributed to the four persons named as beneficiaries in the will and to Myra A. Snook. It further provided that, for the purpose of carrying out the agreement, the beneficiaries under the will did thereby bargain, sell, assign and deliver over unto the said Myra, her heirs, executors, administrators and assigns, their and each of their right, title and interest in and to one-fifth part of the estate.

Notwithstanding the execution of this agreement, however, when the estate was divided it was distributed by the executors in equal shares among the four persons named in the will, to the exclusion of Mrs. Snook. Subsequent to the distribu-

tion Mrs. Snook died, and her administrator assigned to Wyckoff, the defendant in error and plaintiff below, all the right and interest which had vested in her under this contract.

Suit is brought to recover from the plaintiff in error the one-fifth of that portion of the estate which it was agreed, by the terms of the contract referred to, should be paid to Mrs. Snook. At the trial a verdict for the plaintiff was directed, and error is assigned upon that direction.

As has already been stated, the making of the contract sued upon was brought about by a threat on the part of Mrs. Snook to break the will, unless she received a fifth part of Mrs. Weaver's estate, and for the purpose of preventing her from putting that threat into execution. That this was so was proved by the evidence of a son of Mrs. Snook, who was called as a witness by the plaintiff, and who testified as follows: "My mother stated to Mrs. Weaver [the defendant], 'All the parties mentioned in this will are exactly the same as those mentioned in Uncle John's will [the husband of decedent], excepting that I am left out of this will, and you was left out of Uncle John's will, but you are substituted in my place in this will. Now, unless there is some arrangement made by which I shall receive a proportionate share of this estate, to which I am entitled, I have in my possession, or will receive within a day or two, sufficient evidence to set aside the will of Abigail Weaver absolutely, because, at the time of the making of the will, she was not in a proper and fit condition to execute a will, and for divers other reasons.' Mrs. Weaver then stated to my mother: 'Myra, I think that what you say is right, and that it would be the best for all of us to enter into this agreement, and close the matter up, without any trouble, because you know that if you contest the will it certainly cannot stand, and then the Johnsons [the next of kin of Mrs. Abigail Weaver] will get all the money, and we will get nothing.'"

It needs but a moment's reflection to convince that a contract, based upon such a consideration as this was, is illegal. By the terms of the arrangement which led to its making testimony which would have invalidated Mrs. Abigail Weaver's

will was agreed to be suppressed, in order that her estate might be diverted from her next of kin and divided among those who have no legal right to it; and this action is rested upon the proposition that inasmuch as the estate of the decedent has, through the suppression of that testimony, come into the hands of the defendant and her co-legatees, the plaintiff is entitled to be paid the price of Mrs. Snook's turpitude.

The courts of this state have steadfastly refused to lend their aid to enforce contracts which are directed to the accomplishment of a fraudulent purpose, or to entertain suits to recover damages for a breach thereof. *Church* v. *Muir,* 4 *Vroom* 318; *Watson* v. *Murray,* 8 *C. E. Gr.* 257; *Gregory* ads. *Wilson,* 7 *Vroom* 315, 320; *Todd* v. *Rafferty,* 3 *Stew. Eq.* 254, 260; *Hope* v. *Linden Park Association,* 29 *Vroom* 627; *Minzesheimer* v. *Doolittle,* 15 *Dick. Ch. Rep.* 394. And this they do, not out of regard for the defendant in such an action, but because of their unwillingness to use the powers, which were granted to them for the furtherance of lawful ends, in aiding schemes which are, in their nature, venal. As was said by Chief Justice Beasley, in *Gregory* ads. *Wilson, supra,* a court can scarcely be said to perform either a very respectable or a very useful function when it assists a fraud-doer in obtaining from his associate in the fraud his share of the profits of the corrupt scheme.

As soon as the fraudulent character of the contract sued upon was conclusively made to appear by the testimony, the court below should have refused to permit the trial of the cause to proceed further, and have directed a nonsuit to be entered.

The judgment under review should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DEPUE (CHIEF JUSTICE), VAN SYCKEL, GARRISON, GUMMERE, COLLINS, FORT, GARRETSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 13.