L. L. HARRISON, plaintiff in error, *vs.* JOHN H. HATCHER, trustee, defendant in error.

(BY TWO JUDGES.)   1. The proper practice in preparing a motion for a new trial is, that all the rulings of the Court complained of during the trial, as well as the charges, and refusals to charge, of the Judge, shall appear distinctly in the motion, and be affirmatively recognized by the Court as true. But if such motion be made in writing, and notice thereof be given to the opposite party, and no rule *nisi* be granted, but it appear simply that the motion is argued and overruled, this Court will presume that the hearing was on a demurrer to the motion, in which the facts stated in the motion were admitted to be true.

2. Where A makes a deed to B for the purpose of defrauding the creditors of A, but retains possession of the land, and B brings ejectment, A may, by way of defense, set up the fraud under the rule, *in pari delicto potior est conditio possidentis.*

3. In such a case, grantees holding under a deed of gift from B, expressed to be for $5 00, and for love and affection, stand in the same condition as their grantor, and are volunteers.

4. Declarations of one in possession of land, that the land is his, are admissible to show adverse possession, but not for any other purpose.

5. Where written requests to charge the jury are presented to the Judge, which are pertinent and legal charges in the case, as presented by the facts in evidence, and on material issues, which are refused by the Judge, a new trial ought to be granted, even if the verdict of the jury may be sustained, under the evidence, upon other issues in the case not covered by the requests to charge.

6. When, in an action of ejectment, it appear that both parties claim title from the same person, it is not necessary to show title further back than to the common grantor.

7. A trustee for a woman during her life, with directions to convey to

her children at her death, may sustain an action against an adverse holder to recover the possession after the death of the mother.

8. When it was agreed that original deeds might be used in the argument of a motion for a new trial, and to the copy of the parol evidence various copy deeds were appended and sent up by the Clerk as part of the brief of the evidence, and the bill of exceptions contained no mention of such deeds, except that deeds, copies of which are attached to the brief of evidence, were read in evidence, this Court refused to dismiss the cause, because said copies were not certified to be copies of said originals. The Court said they would presume that to be so. (R. See end of Report.)   27th February, 1872.

Ejectment. Evidence. Fraudulent conveyances. Sayings of party in possession. Practice in Superior and Supreme Courts. Presumptions. Before Judge HARRELL. Quitman Superior Court. May Term, 1871.

This was ejectment by Doe, upon the demises of John W. Hatcher, as trustee for his named children and of Bird W. Tarver against Roe, casual ejector, and L. L. Harrison, tenant, for land in said county. It was begun on the 12th of October, 1869. The defendant pleaded not guilty, and a prescriptive right by seven years' adverse possession before the beginning of the suit.

Plaintiff traced title from the State to one West, in 1836, and read a deed from said L. L. Harrison to Joel Butler, made in March, 1838; a deed from said West to said Butler, made in May, 1838; a deed from Butler, made in February, 1855, to Jones, as trustee for Mrs. Martha Harrison and her children, free from the control or liabilities of her husband, L. L. Harrison, for her separate use, during her life, and at her death "said land to be conveyed to her children, share and share alike." He then put in evidence a petition by one Hyde, reciting that he married one of defendant's daughters; that Jones died without executing the trust aforesaid, and a prayer that said Hatcher be appointed trustee in lieu of said Jones, and an order of the Court, made in October, 1866, appointing Hatcher accordingly.

Hyde testified, that in 1858 and 1865, defendant told him

that the lot was not his, but his children's, (but subsequently said it was his own,) and that defendant had been in possession thereof ever since Mrs. Harrison's death. The Court overruled a motion for non-suit. It was shown that she died in 1856 or 1857. It was shown that her children, the *cestui que trusts*, were alive. It was shown that L. L. Harrison gave in said lot for taxes in 1864, 1866 and 1867, the first two years as guardian for his children, and the last as their agent.

Defendant testified, that he purchased said land from West, and paid him for it $1,500 00; took immediate possession of it, and remained in possession ever since, claiming it as his own, (and no one had ever paid him a cent for it;) that he had, all the while, been embarrassed, and gave in the land as his children's only to conceal from his creditors that it was his; he was never the guardian or agent of his children. He said, he meant by no one had ever paid him a cent for it, that Butler never paid him anything for it. The Court then ruled out the evidence above, in brackets. He further swore that when he bought the land from West, he, West and Butler agreed that Butler should hold the land for him. The Court here ruled out the testimony as to his buying it from West, and paying him $1,500 00 therefor. It was then shown that defendant took possession of the premises, from West, between 1834 and 1838, and had been in possession ever since, and that Butler was defendant's father-in-law, and frequently said that Harrison paid for the land, and that he held the title to keep it from being sold for Harrison's debts.

Counsel asked the witness if, in 1854, Butler did not get mad with Harrison and say he would have nothing more to do with him. The Court would not allow the witness to answer, and remarked, in the hearing of the jury, that Butler made the deed, and it was immaterial why he did it. Butler was never in possession of the land.

Defendant's counsel requested the Court to charge the jury as follows:

1st. If Harrison paid for the land and the title was made to Butler without his paying anything for it, Butler holds. for Harrison and plaintiff cannot recover.  2d. If Harrison paid the purchase-money for the lots and the deed was made to Butler to defraud Harrison's creditors, and Harrison remained in possession, the transaction was fraudulent, and Harrison cannot be ousted, even if the party holds the paper title, as a Court will not aid a party to a fraud to assert rights against the other party, and will not disturb the possession. - 3d. If Harrison made the deed to Butler for a consideration and remained in possession ever since 1838, the jury might infer fraud, and if they believed the deed was fraudulent the plaintiff could not recover.  4th. Plaintiffs being volunteers and not purchasers, are in no better condition than Butler, and if Butler participated in the fraud upon Harrison's creditors, plaintiffs can not recover.  There were several other requests of like purport.  The Court refused to give any of them in charge to the jury.  What he charged does not appear.  The jury found for the plaintiff.

Defendant's counsel moved for a new trial upon the grounds that the Court erred in ruling out said evidence of defendant; in refusing to charge as requested; in ruling out the fact that defendant, while in possession, claimed the land as his own, and because the verdict was contrary to law, etc.  The Court refused a new trial, and error is assigned on said points and others immaterial here.

When the copy of the oral evidence was made up it was recited that plaintiffs "read various deeds to the land in dispute," and "that the originals shall be used without copying for the purpose of their motion in the Court below." The bill of exceptions did not contain a copy of said deeds, but simply said the evidence "embraced in a motion for new trial, and the deeds, copies of which, and other papers attached to said brief, were offered and submitted to the jury." To the brief of evidence as sent up were attached copies of the deeds before mentioned.  When the cause was called for

trial here, counsel for defendant in error moved to dismiss it, because it did not appear affirmatively that such copies were copies of the deeds used on the trial. The Court overruled the motion, saying it would presume that they were copies of those used below.

A. Hood, by Kiddoo, for plaintiff in error.

John T. Clark, for defendant.

McCay, Judge.

1. It would be far better, and oft-times would relieve this Court from embarrassment, if it were always made distinctly to appear in the record on a motion for a new trial, that the grounds taken are or are not true. A motion is sometimes made and overruled, and it is impossible for this Court to say whether it was overruled because the Judge was satisfied there was no error in his ruling, or because he did not rule as stated. In this case we have had some difficulty in getting at the truth in this very particular. But, after much consideration, we have concluded that as this was a motion, not a rule *nisi*, and was overruled, it is fair to treat the judgment of the Court overruling the motion, as in the nature of a judgment sustaining a demurrer to the motion and assuming as true all the facts stated in the motion.

2. On looking into the cases upon this subject, we are satisfied that the rule *in pari delicto* applies to the condition of a defendant in a suit, even though he sets up his own fraud. He is in possession, and the Courts will not aid the other party to get possession under a fraudulent deed. They will even permit the defendant to say the deed, under which the plaintiff claims, is a fraud—the result of evil practices between him and me—and if this be made out by the proof, the plaintiff cannot recover: 16 Ga. R., 416; 20th, 600; 19th, 290; 22d, 431; 9th, 158; 11th, 547; 3d, 176, 182, 183; 2 Stewart's Ala. R., 192. And this same rule applies

Harrison *vs.* Hatcher.

as well to the parties as to those claiming under them, either as volunteers, or as purchasers with notice.

3. The deed, by Butler to the children of Harrison, though it expresses a money consideration of $5 00, is, yet, upon the very face of it, only a voluntary deed, and based on love and affection. The $5 00 is only nominal, and was introduced into such deeds to bring them within the statute of uses as deeds of bargain and sale, which imply a money consideration of some sort.

4. The declarations of Harrison, as to the character of his own possession, were properly admitted for the purpose of showing that he was holding adversely to the plaintiffs; not to show title, but merely to explain the nature of his possession: 18 Ga. R., 573; 19th, 167; Code, sec. 3721.

5. We are clear that the Judge erred in his charge, and in his refusals to charge, on the question of the right of the defendant to set up his own fraudulent conduct. As we have said before, (in second head note) as he was the defendant, and the plaintiffs were seeking the aid of the Courts to consummate the fraud, to make it effective, the defendant may defeat the action by showing the fraud. This was one of the principal issues in this case, and, though the verdict of the jury may, as we shall presently show, be *sustained* on other grounds, yet, as perhaps the jury would have found differently, had the law in this branch of the subject been properly given, we are compelled, under the rules of law, to grant a new trial.

As we have said, we think the verdict of the jury can be *sustained*, even though the rule be admitted in full, that Harrison may show his own fraud. The frequent admission by Harrison that it was his children's land, and the deed from Butler to them, as well as Harrison's acts in giving the land in for taxes, as the property of his children, are all facts of considerable weight, going to show that the deed from Butler to the children was by Harrison's direction or acquiescence, and was done as a bounty to the children, and not as a part of the original fraud. It does not appear that the passing

of the title to the children was part of the original plan, or that it was at all necessary to perfect it. If Harrison directed it, or acquiesced in it, as a compliance, by Butler, with the implied understanding between them, at the time of the original fraud ; that, when the storm blew over, he was again to have the land, and it was the free bounty of Harrison to his children, and not a mere additional device to keep it out of the way of his creditors, he is bound by it. There is evidence in the record to justify this, and had the Judge given the law correctly in the other points, we incline to think the verdict of the jury sustainable on this ground. But, as it was not demanded and required by the evidence, we think a new trial ought to be granted, that the true merits of the case, in all its phases, may go to the jury and be passed upon.

6. Nothing is better settled than that a plaintiff is not, in the first instance, bound in an action of ejectment to show title further back than the defendant. He is estopped, by his deed, from denying that he had title. This rule made the refusal to non-suit proper, as, in any event, the plaintiff had a *prima facie* right to recover one of the lots, since he had Harrison's deed to it.

7. The duties of the trustee are not fully performed until he turns the property of the trust over to the beneficiaries, dividing it among them as required by the deed of trust. Indeed, we incline to think that, as against everybody but the beneficiaries, he has a right to sue for any cause of action occurring during the existence of the trust.

Judgment reversed.