BEVERLY H. BURTON AND MARY A. BURTON, HIS WIFE, PLAINTIFFS IN ERROR, v. A. M. MCMILLAN, DEFENDANT IN ERROR.

An action of ejectment is brought by McMillan against the Burtons—husband and wife—for the possession of a lot of land conveyed to McMillan by the Burtons, and mesne profits.    At the time of the conveyance to Mc-

Burton et al. v. McMillan—Syllabus.

Millan the land was the separate property of Mrs. Burton. The Burtons pleaded not guilty, and special pleas setting up, among other things, that the sole consideration for the deed was the promise of McMillan not to prosecute B. H. Burton, the husband, or prevent his prosecution, for the crime of embezzlement. To these pleas the plaintiff, McMillan, filed a replication of res adjudicata, setting up that the facts alleged in the pleas had been adjudicated in favor of McMillan in a chancery suit brought by the Burtons against McMillan to set aside said deed of conveyance, and making the proceedings in the chancery suit a part of the replication. To this replication a demurrer was interposed by the Burtons on the ground in substance, among others, that the replication did not show an adjudication of the defense set up in the pleas. This demurrer was overruled, and judgment entered for McMillan. In the chancery suit the bill of the Burtons was demurred to on two grounds, viz: First, that it was without equity, and, second, that it was multifarious. This demurrer was sustained by the judge and the bill dismissesd, but his order does not state upon what ground the demurrer was sustained. Held: In determining what was adjudicated in the chancery suit, this court will assume that the judge, in deciding that case, did so upon the merits, without regard to whether his decision was correct, or otherwise; that he did not ignore the plain allegations of the bill, and when it was therein alleged, among other things, that the sole consideration for the deed was the promise of McMillan not to prosecute or to prevent the prosecution of B. H. Burton for the crime of embezzlement, of which he was guilty; that the judge sustained the demurrer on the ground that the parties to the deed were "in pari delicto," and that neither was in a position to obtain relief, either against or under the deed; and, Held Further, that under such circumstances the plea of res adjudicata set up no defense to the pleas of the Burtons in the ejectment suit.

This case was decided by Division B.

Writ of error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*Blount & Blount,* for Plaintiffs in Error;

*Maxwell & Reeves and Avery & Avery,* for Defendant in Error.

HOCKER, J.: On the 13th of February, 1906, the defendant in error, A. M. McMillan, who will hereafter be styled the plaintiff, brought an action of ejectment in the Circuit Court of Escambia county against B. H. Burton and Mary A. Burton, the plaintiffs in error, hereinafter called the defendants, to recover the possession of certain lots of land situated in Pensacola, and the profits thereof, since 1st of August, 1905.

The defendants filed three pleas:

1st. Not guilty.

2nd. "That the plaintiff claims title to the real estate sued for herein only under and by virtue of a deed of conveyance made by these defendants to him on May 8, A. D. 1905, purporting to convey the property sought to be recovered by the defendants herein; that prior to the date of said conveyance the defendant, Mary A. Burton, was the owner in fee simple of the said property and that it was and had been for many years the homestead of the defendants and their family; that also, for many years prior to said date, the plaintiff had been and was then the Clerk of the Circuit Court of Escambia County, Florida, and a man of prominence, influence and wealth; that also for many years prior to said day the defendant, Beverly H. Burton, was the Deputy Clerk of said court, having been

appointed thereto by the plaintiff; that in the course of the conduct of said business it became the duty of the defendant, Beverly H. Burton, to handle vouchers drawn upon the public funds of said county, and just prior to said date the Clerk concluded that certain of the moneys belonging to said county had been embezzled, or made way with, or wrongly obtained by some person in the office of him, the said plaintiff, as Clerk of the said court, and he accused the said defendant, Beverly H. Burton, of being the person committing such wrong; that the defendants were much disturbed by the making of such charge and by the stigma that would be cast upon them and their family, if a criminal prosecution should be instituted and if the defendant, Beverly H. Burton, should be convicted and imprisoned in the penitentiary, and were desirous of avoiding the said prosecution; that the plaintiff claimed that he was responsible to the said county of Escambia for the said funds and desired that he should be secured against his paying the said moneys so embezzled, to the said county, by a conveyance from the defendants of their property to him, including not only the property in controversy, but also all the household furniture and also certain personal property belonging to their daughter, one May Burton, and the plaintiff came to the house of the defendants and stated to them that he and the State Auditor, who would have, as he asserted, the control of said prosecution and who had discovered the said embezzlement, had been schoolmates, and assured and promised the defendants that if they would deed to him the real estate in controversy, and if the defendant, Beverly H. Burton, would convey to him the household furniture in the house thereon, and if they would procure their daughter, May Burton, to also convey the personal prop-

erty hereinbefore mentioned, he would so arrange that no criminal prosecution should be instituted against the said defendant, Beverly H. Burton; that thereupon, the defend ants executed and delivered to the plaintiff the deed for the real estate aforesaid, and the defendant, Beverly H. Burton, executed and delivered to him a bill of sale for the said household furniture, and the said May Burton exe- cuted and delivered to him a bill of sale for the personal property belonging to her, hereinbefore mentioned; that the defendant, Mary A. Burton, only became aware of the charges made by the plaintiff that her said husband had embezzled the funds of the said county on the day be- fore the making of the said conveyance and the bills of sale aforesaid, by the statement of her husband that such charge had been made, and upon the same day the plain- tiff came to the house of the defendants and remained for a very long time, persuading and influencing him and her to make the said conveyance and bill of sale, promising, as aforesaid, that if they should be made he would see that no prosecution would be brought against the defend- ant, Beverly H. Burton; that the defendants were loath to make the said instruments, because the effect of transfer- ring the property therein mentioned to the plaintiff would be to leave them and their children (of which they had and have four) without a home or furniture and penni- less, but the defendant, Mary A. Burton, had then been sick with a nervous disease for many years and her nerves were so affected and her mind so weakened by the com- munication to her and the threatened exposure of her said husband and the consequent imprisonment of him in the penitentiary, that she yielded and consented to execute the said conveyance and did so; the time elapsing between her first knowledge of the charge against her said hus-

band and her execution of the said conveyance was only the time between the late morning of a Sunday and the early morning of the next day, and that during this time the plaintiff had two interviews with her and prevailed upon her to execute the said conveyance, and that finally when she did so she was so weak and unstrung that she was compelled to get up from a sick bed to execute it, and that but for her said nervous and unstrung condition and the influence of the plaintiff and his assurances aforesaid, and the terror in which she was at the threatened exposure and imprisonment of her husband, she would not have executed the same; that in violation of his said assurances to the defendants, after the plaintiff had received the said deed and the said bills of sale, he did not procure that there should be no criminal prosecution against the defendant, Beverly H. Burton, for the said alleged crime, but, on the contrary, he, the said plaintiff, himself, instituted a prosecution therefor before the Justice of the Peace of the Second District of Escambia county, Florida, under which he caused the plaintiff ( ?) to be arrested and brought before the said Justice of the Peace, and that in consequence of the said prosecution, so instigated by him, the said defendant, Beverly H. Burton, has been convicted in the Circuit Court of Escambia county, Florida, upon the charges aforesaid, and sentenced to the penitentiary of the State of Florida and is now serving said sentence in said penitentiary."

3rd. "And for plea upon equitable grounds, the defendants say: That the plaintiff claims title to the real estate sued for herein only under and by virtue of a deed of conveyance made by these defendants to him on May 8, A. D. 1905, purporting to convey the property sought to be recovered by the defendants herein; that prior to the

date of said conveyance the defendant, Mary A. Burton, was the owner in fee simple of the said property and that it was and had been for many years the homestead of the defendants and their family; and also, for many years prior to said date, the plaintiff had been and was then the Clerk of the Circuit Court of Escambia county, Florida, a man of prominence, influence and wealth; that also for many years prior to said day the defendant, Beverly H. Burton, was the Deputy Clerk of said court, having been appointed thereto by the plaintiff; that in the course of the conduct of said business it became the duty of the defendant, Beverly H. Burton, to handle vouchers drawn upon the public funds of said county, and just prior to said date the Clerk concluded that certain of the moneys belonging to said county had been embezzled, or made way with, or wrongfully obtained by some person in the office of him, the said plaintiff, as Clerk of the said court, and he accused the said defendant, Beverly H. Burton, of being the person committing such wrong; that the defendants were much disturbed by the making of such charge and by the stigma that would be cast upon them and their family, if a criminal prosecution should be instituted and if the defendant, Beverly H. Burton, should be convicted and imprisoned in the penitentiary, and were desirous of avoiding the said prosecution; that the plaintiff claimed that he was responsible to the said county of Escambia for the said funds and desired that he should be secured against his paying the said moneys, so embezzled, to the said county, by a conveyance from the defendants of their property to him, including not only the property in controversy, but also all the household furniture and also certain personal property belonging to their daughter, one May Burton, and the plaintiff came to the

house of the defendants and stated to them that he and
the State Auditor, who would have, as he asserted, the
control of said prosecution and who had discovered the
said embezzlement, had been schoolmates, and assured and
promised the defendants that if they would deed to him
the real estate in controversy, and if the defendant, Bev-
erly H. Burton, would convey to him the household furni-
ture in the house thereon, and if they would procure
their daughter, May Burton, to also convey the personal
property hereinbefore mentioned, he would so arrange
that no criminal prosecution should be instituted against
the said defendant, Beverly H. Burton; that thereupon,
the defendants executed and delivered to the plaintiff
the deed for the real estate aforesaid, and the defendant,
Beverly H. Burton, executed and delivered to him a bill
of sale for the said household furniture, and the said May
Burton executed and delivered to him a bill of sale for
the personal property belonging to her, hereinbefore men-
tioned; that the defendant, Mary A. Burton, only became
aware of the charges made by the plaintiff that her said
husband had embezzled the funds of the said county on
the day before the making of the said conveyance and the
bills of sale aforesaid, by the statement of her husband
that such charge had been made, and upon the same day
the plaintiff came to the house of the defendants and re-
mained for a very long time, persuading and influencing
him and her to make the said conveyance and bill of sale,
promising, as aforesaid, that if they should be made he
would see that no prosecution would be brought against
the defendant, Beverly H. Burton; that the defendants
were loath to make the said instruments, because the ef-
fect of transferring the property therein mentioned to the
plaintiff would be to leave them and their children (of

which they had and have four) without a home or furniture and penniless; but the defendant, Mary A. Burton, had then been sick with a nervous disease for many years and her nerves were so affected and her mind so weakened by the communication to her and the threatened exposure of her said husband and the consequent imprisonment of him in the penitentiary, that she yielded and consented to execute the said conveyance and did so; the time elapsing between her first knowledge of the charge against her said husband and her execution of the said conveyance was only the time between the late morning of a Sunday and the early morning of the next day, and that during this time the plaintiff had two interviews with her and prevailed upon her to execute the said conveyance, and that finally when she did so she was so weak and unstrung that she was compelled to get up from a sick bed to execute it, and that but for her said nervous and unstrung condition and the influence of the plaintiff and his assurances aforesaid, and the terror in which she was at the threatened exposure and imprisonment of her husband, she would not have executed the same; that in violation of his said assurances to the defendants, after the plaintiff had received the said deed and the said bills of sale, he did not procure that there should be no criminal prosecution against the defendant, Beverly H. Burton, for the said alleged crime, but, upon the contrary, he, the said plaintiff, himself, instituted a prosecution therefor before the Justice of the Peace of the Second District of Escambia county, Florida, under which he caused the plaintiff to be arrested and brought before the said Justice of the Peace, and that in consequence of the said prosecution, so instigated by him, the said defendant, Beverly H. Burton, has been convicted in the Circuit Court of Escambia county,

Florida, upon the charges aforesaid, and sentenced to the penitentiary of the State of Florida and is now serving said sentence in said penitentiary."

To the second and third pleas the plaintiff filed a replication in the following words: "The plaintiff for replication to the defendants' second and third pleas herein filed on the 16th day of April, 1906, says that heretofore, to-wit, on the 8th day of July, 1905, the defendants filed in the Circuit Court of Escambia county, Florida, their bill of complaint against the plaintiff, a copy of which said bill of complaint is hereto attached, marked Exhibit 'A.' and made a part hereof; that thereafter on the 21st day of Dec. 1905, the plaintiff herein, who was the respondent named in said bill of complaint, filed his demurrer to said bill a copy of which said demurrer is hereto attached, marked Exhibit 'C' and made a part hereof; that there after on the 11th day of December, 1905, the defendants herein who were the complainants named in said bill of complaint, filed in said court an amended bill of complaint, a copy of which said amended bill is hereto attached, marked Exhibit 'B,' and made a part hereof; that thereafter the said demurrer filed to said original bill of complaint was brought on for hearing, as applying to said amended bill of complaint; and on the 13th day of February, 1906, the Judge of said court having jurisdiction of said matters presented in and by said bill and amended bill of complaint, made an order sustaining said demurrer and allowing the complainants in said action until the rule day in March, A. D. 1906, to further amend their said bill as they might be advised, a copy of which said order is hereto attached, marked Exhibit 'D,' and made a part hereof; that the defendants herein who were the complainants in the said bill of complaint and amended bill of

complaint, copies of which are hereto attached, marked
Exhibits 'A' and 'B' respectively, declined further to
amend their said bill of complaint; thereafter the plain-
tiff herein as the respondent named in the said bill of
complaint, moved the court upon affidavit filed, to dis-
miss the said bill of complaint, copies of which said mo-
tion and affidavit are hereto attached, marked respectively
Exhibits 'E' and 'F,' and made a part hereof; and on
the 12th day of March, A. D. 1906, the judge of said court
made an order dismissing the said bill and taxing the costs
to the defendants herein, a copy of which said order is
hereto attached, marked Exhibit 'G,' and made a part
hereof; that the said B. H. Burton mentioned in the said
bill of complaint is the identical B. H. Burton who is the
defendant herein; that the said Mary A. Burton men-
tioned in the said bill of complaint is the identical Mary
A. Burton who is the defendant herein; that the said A.
M. McMillan who was the respondent mentioned in said
bill of complaint is the identical A. M. McMillan who is
the plaintiff herein; that the said order dismissing the
said bill of complaint still remains in full force and effect,
not in the least reversed or made void, as by the records
and proceedings therein, copies of which are hereto at-
tached, marked Exhibits 'A,' 'B,' 'C,' 'D,' 'E,' 'F,' and
'G' respectively as aforesaid more fully and at large ap-
pears. That the deed mentioned in said pleas is the same
deed as that which it was sought in and by said bill to
have canceled and the property therein described is the
identical property here sued for."

The bill, demurrer thereto and the decrees rendered, re-
ferred to in the Exhibits to the replication are set out
either in full or substantially in the opinion rendered by
this court at this term in the chancery suit therein re-

ferred to, which was brought to this court by the defendants on an appeal from the said decrees, and therefore it is unnecessary to set them out at length here, as they can be examined in that case. No order superseding said decrees appears to have been made.

The defendants demurred to this replication on four grounds as follows: "1. That the said replication does not show any former adjustment between the parties to this suit of the defense interposed by the second plea.

2. That the said replication does not show any cause why the defendants should not in this cause avail themselves of the defendants set off (?) in the said plea.

3. That the said replication does not show any former adjustment between the parties to this suit of the defense interposed by the third plea.

4. That the said replication does not show any reason why the defendants should not in this cause avail themselves of the defendants set off (?) in their third plea."

On April 17th, 1906, the Judge overruled the demurrer, and gave judgment against the defendants in respect to the replication to pleas numbered two and three, and ordered a trial on the plea of not guilty. The jury on the trial found in their verdict that the plaintiff had title to the lots described in the declaration, and was entitled at the time of the institution of the suit to the possession of the same, and for $192.00 mesne profits. A judgment was entered in favor of the plaintiff upon this verdict, and for costs. From this judgment writ of error was sued out from this court.

The following errors are assigned: "1. That the court

erred in overruling the demurrer of the defendants to the replication of the plaintiff to the second plea.

2. That the court erred in overruling the demurrer of the defendants to the replication of the plaintiff to the third plea.

3. That the court erred in excluding from the consideration of the jury the testimony offered by the defendants as tending to show duress of the defendant Mary A. Burton in the execution of the deed under which the plaintiff claimed.

4. That the court erred in excluding from the consideration of the jury the testimony offered by the defendants tending to show that the deed under which the plaintiff claimed was given by the defendants in consideration of the compounding of a felony.

5. That the court erred in holding that the record offered by the plaintiff in the chancery suit of the defendants against the plaintiff in the Circuit Court of Escambia county, Florida, was a bar to and estopped the defendants from setting up the matters mentioned in the third and fourth assignments.

6. That the court erred in directing a verdict for the plaintiff as to the title and possession of the property in controversy."

On the trial it appears that the plaintiff introduced in evidence the deed from the defendants to the plaintiff to show possession of the property by the defendants, and the rental value. The defendants then announced that they would offer evidence to prove the facts set forth in their pleas, and the plaintiff announced that he would offer in

Burton et al v. McMillan—Opinion of Court.

evidence the record set forth in his replication; it was agreed for the respective parties, that upon the offer of the said evidence by the defendants and the plaintiff, if the court should decide that the said record and decree constituted a bar to the maintenance of a defense upon the facts offered to be proved by the said defendants, the said testimony offered by the defendants should be excluded, subject to exception and objection by the defendants. Thereupon the plaintiff rested, and the defendants caused witnesses to be sworn, and offered to prove the facts set forth in their pleas. The plaintiff then offered in evidence the record in the chancery suit which has been referred to, including the bill as amended, filed by the defendants on the chancery side of the Circuit Court of Escambia county, the demurrers thereto, the orders of the Judge sustaining the demurrer, and the decree dismissing the bill. The trial judge then decided that the defendants were estopped from setting up the defense shown by the testimony which they offered, and refused to permit the same to be given in evidence to the jury, to which action of the Judge the defendants then and there excepted. The court then directed a verdict for the plaintiff against the defendants for the possession of the land in controversy, and against the defendant B. H. Burton for the mesne profits, to which ruling the defendants then and there excepted.

And here we pause a moment to express our approbation and appreciation of the skill and laudable spirit exhibited by the attorneys of the respective parties in so shaping the record as to presnt to the court the naked questions of law involving the real merits of the case, without undue prolixity and without unnecessary complications.

16—S. C.

The question presented is whether the replication of the defendant set up a good plea of *'res adjudicata''* to the matters presented in the second and third pleas of the defendants. In this case we cannot determine whether the decision of the Chancellor was correct or the reverse. This question seems to us to be a novel one, as we have been cited to no case, nor have we been able to find one, where the doctrine of *res adjudicata* was invoked under circumstances similar to those in the case. We are invited by the plaintiffs in error to decide whether the doctrine applies to the order sustaining the demurrer to the bill and the decree of dismissal based thereon inasmuch as the demurrer contained two grounds: 1st. That the bill was without equity, and, 2nd, that it was multifarious, and there is no statement in the orders of the judge showing upon which ground he sustained the demurrer, but we do not think it necessary to do so. We proceed, without deciding these questions, upon the theory that we will not presume that the bill was not disposed of upon its merits, or that the Chancellor ignored the plain allegations of the bill. 2 Black on Judgments (2nd ed.) 722.

What then was adjudicated in the chancery suit? It was substantially alleged in the bill, among other things, that at the time of the conveyance by the Burtons to McMillan, Mary A. Burton, the wife of B. H. Burton, was the owner in fee simple of the lots of land thereby conveyed; that McMillan was and had been for some time Clerk of the Circuit Court of Escambia county; that Beverly H. Burton had for some years been his deputy; that Mary A. Burton learned first of the charge of embezzlement made by McMillan against B. H. Burton, the husband of Mary, on the day before the morning of the day upon which the deed was executed; that McMillan

had two interviews with Mary, insisting that she should convey her property to him and promising if she would do so he could and would arrange that no criminal prosecution should be instituted against B. H. Burton, her husband; that the home of the defendants was located on the lots conveyed; that she was loath to make the conveyance, as it would leave her and her family of children without a home and penniless; that she relied upon the promise of McMillan and his promise that her husband should not be prosecuted, was the sole consideration for the conveyance. The demurrer admits these allegations.

The fact that Mrs. Burton may have been anxious to avoid the conviction and disgrace of her husband and family cannot, we think, be construed as any part of the consideration for the execution of the deed, inasmuch as it is not alleged in the bill to have been a part of the consideration, and inasmuch as in her alleged sick and nervous condition her anxieties could not upon principles of humanity be reasonably included in the consideration. Inasmuch as the bill does not allege the contrary, construing it most strongly against the complainants, it may be conceded that Burton was actually guilty of embezzlement at the time the deed was executed. Upon this state of the facts, the deed was executed upon the sole consideration of compounding a felony, which was an illegal consideration, *contra bonos mores*. Section 2592 Rev. Stats. of 1892. Under such circumstances some courts refuse relief on the ground that both parties are *"in pari delicto,"* and that good policy requires the court to leave the parties as it finds them, and not corrupt itself by interfering between a corrupt vendor and an equally corrupt vendee. This is one of the contentions of the defendant in error and the authorities cited by his attorneys

sustain this doctrine, viz: Rock v. Mathews, 35 West Va. 531, 14 S. E. Rep. 137, 14 L. R. A. 508; Moore v. Adams, 8 Ohio 373; Compton v. Bunker Hill Bank, 96 Ill. 301, S. C. 36 Am. Rep. 147; and to these many others might be added. In such a case, as we understand the court simply stands aloof, and that it seems to us is the only effect of a decree dismissing a bill on that ground. It establishes no right in either party, and we do not understand how, or upon what principle either party can assert any right based on the contract so held to be illegal. "The court does not give effect to the illegal contract, but simply refuses its aid to undo what the parties have already done." Myers v. Meinrath, 101 Mass. 366, text 368. But where a contract is thus held to be against public policy and illegal, the maxim *"in pari delicto potior est conditio defendentis"* applies, and in any action to enforce the transaction, the defendant has the best of the situation. Courts of equity follow the rule of law as to the enforcement of and relief from illegal contracts and as a general rule refuse either to enforce illegal contracts or to grant any relief to the parties thereto, merely leaving them in the position in which they have placed themselves." 15 Am. & Eng. Ency. Law (2nd ed.) p 1001. If the sole ground of the decision in the chancery suit in sustaining the demurrer and dismissing the bill was that the parties were *"in pari delicto"* as we think it must necessarily have been, in view of the allegations of the bill McMillan secured no rights by that decree which he might assert affirmatively against Mrs. Burton. Its effect was that of *res adjudicata,* as to each of them in respect to the illegal deed. Neither party could enforce a right under it. While in possession she was free to defend any suit by him for possession of the property which had not been delivered

to him, by showing that the consideration for the execution of the deed was illegal. Kirkpatrick v. Clark, 132 Ill. 342, 24 N. E. Rep. 71, S. C. 22 Am. St. Rep. 531 note p. 539; Harrison v. Hatcher, 44 Ga. 638. The case of Gordon v. Johnson, 3 Col. App. 139, was decided upon this principle. Gordon sued Johnson to enforce the specific performance of a contract. Johnson answered that previously he had sued to have the same contract declared null and void, and that the court decreed that it was null and void, and because the contract was null and void dismissed his complaint. On demurrer this answer was sustained as a good defence to the suit for specific performance on the ground of *res adjudicata.* The Supreme Court of Colorado affirmed this decision.

Upon the theory that the maxim *"in pari delicto potior est conditio defendentis"* was applicable to the chancery suit instituted by Mrs. Burton and her husband against McMillan, then it and the kindred maxim *"ex dolo malo* (or *exturpi causa*) *non oritur actio,"* should apply to McMillan in this action based on the illegal deed, for the possession of the property described therein. See 15 Am. & Eng. Ency. Law (2nd ed.) p. 997. We think the court erred in overruling the demurrer of the defendants to the replication of plaintiffs to the third plea of defendants.

The judgment is reversed at the cost of defendant in error and the cause remanded for further disposition.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.

TAYLOR, J. (*concurring*) : I concur in the views expressed in the opinion of Mr. Justice HOCKER in this case, and think that the judgment in the ejectment suit should be

reversed for the following additional reasons: The decree in the chancery suit between the same parties was not *res adjudicata* of the main issue in the ejectment suit. In the chancery suit the only issue involved was the right of the complainants to the affirmative relief therein prayed of having their deed delivered up for cancellation as having been obtained by duress. This affirmative relief was denied, evidently upon the ground that the complainants showed by their bill that they were *in pari delicto* in executing the deed as a consideration for the compounding of a felony, and in dismissing such bill the court simply held aloof and withheld the affirmative relief sought thereby, passively leaving the complainants in the position in which they had placed themselves. No question of the *right of possession* of the property was involved in the chancery suit, and consequently the decree dismissing the bill did not decide the question of the right of possession of the property.

In this ejectment suit at law, however, brought by the grantee in the deed sought to be canceled in the equity suit, against the grantors therein, one of the chief issues involved and to be determined was the *right of possession* of the property, and if the facts alleged in the pleas of the defendants in such ejectment suit were proven to be true then it would have been shown that the grantee in such deed, who was the plaintiff in such ejectment suit, was also *in pari delicto* to the compounding of a felony through which such deed was obtained by him and the court should also have withheld from him the fruits of his wrongdoing by denying to him the *possession* of the property that he affirmatively sought by his ejectment suit. Particularly is this applicable to the plea of the defendants upon equitable grounds in the ejectment suit at

law. By such plea the defendants do not seek and cannot secure any *affirmative* relief, but can simply allege matter showing that the plaintiff should not be granted the affirmative relief which he seeks by his suit. If the allegations of the defendants' plea were true, then the plaintiff in his ejectment suit should not have been permitted to reap any benefit from his claim of *res adjudicata* of the question presented by such pleas, but should, at least, have been tarred with the same stick of *in pari delicto* by which the defendants were glued to the position in which they had placed themselves by the execution of the deed sought to be canceled by their chancery suit.